[No. S111309. Jan. 13, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN PAUL BETTS, Defendant and Appellant.

**COUNSEL**

Jeffrey J. Stuetz, under appointment by the Supreme Court, and Waldemar D. Halka DeSalava for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster, Garrett Beaumont, Warren P. Robinson, Frederick R. Millar, Jr., and Steven T. Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GEORGE, C. J.**—Defendant John Paul Betts was convicted in the Riverside County Superior Court on a number of counts involving lewd acts committed on a child. Some of these acts were committed in California but outside of Riverside County, and some were committed outside of the state. His convictions were affirmed by the Court of Appeal. We granted review to consider the following issues: (1) When a criminal prosecution is brought in California, and the alleged criminal activity occurred in part outside California, is the determination whether a California court has jurisdiction over the criminal proceeding to be made by the trial court or by a jury? (2) Was the evidence in this case sufficient to support the conclusion that California courts have jurisdiction to adjudicate defendant's crimes? (3) Is the question of venue a matter to be determined by the trial court or by a jury? (4) Was venue proper in Riverside County for prosecution of a crime completed in Los Angeles County?

In *People v. Posey* (2004) 32 Cal.4th 193 [8 Cal.Rptr.3d 551, 82 P.3d 755], we addressed the third of these questions, concluding the issue of venue is a

matter to be resolved by the trial court. For the reasons discussed below, we conclude with regard to the remaining issues presented here that (1) the question whether a California court has jurisdiction to adjudicate a charge of a crime committed in whole or in part outside of the state similarly is a matter to be determined by the trial court rather than by a jury; (2) the evidence in this case was sufficient to support the exercise of jurisdiction by a California court over all of the alleged crimes; and (3) venue for the offenses that were completed in Los Angeles County was proper in Riverside County. Accordingly, the judgment of the Court of Appeal affirming defendant's conviction is affirmed.

## I.

Defendant was convicted of four counts of committing a lewd act on a child (Pen. Code, § 288, subd. (a))[1] involving victim Nichole, who was 11 years of age at the time of the offenses. Defendant also was convicted of three similar offenses involving victim Breanna, who was nine years of age when the offenses occurred—one count of committing a lewd act by use of force or menace (§ 288, subd. (b)(1)), one count of committing a lewd act (§ 288, subd. (a)), and one count of attempted commission of a lewd act (§§ 21a, 288, subd. (a)).

The evidence at trial established the following facts. Defendant was a long-haul truck driver. The charged offenses took place during three trucking trips, each of which began in Hemet, in Riverside County. Shortly before the first trip, defendant married Linda, who also was a truck driver. When not on the road, they lived in Hemet, staying either with Linda's mother or with Linda's daughter, who had four children, including the two victims Nichole and Breanna. Two or three days after defendant and Linda were married, defendant suggested that Nichole, who was then 11 years of age, accompany him and Linda on a trucking trip to North Carolina. Linda had expected the trip would be a honeymoon. The trip began in Hemet. Defendant and Linda took turns driving and sleeping, with defendant normally driving during the day and Linda at night. The truck had a sleeping area behind the cab with bunk beds.

During the night on the second day of the trip, while Linda was driving, defendant entered the lower bunk where Nichole was sleeping and touched her in a lewd manner. Nichole subsequently told Linda that she did not like sleeping with defendant. As a result, Linda put the top bunk down so Nichole could sleep there. Defendant protested that it was illegal for Nichole to sleep in the top bunk while the truck was moving. On several other occasions

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

during the trip, while Linda was driving, defendant entered the lower bunk and pressed up against Nichole in a lewd manner. All of these incidents of lewd conduct occurred while the truck was travelling somewhere outside of California.

When Linda and defendant returned to Hemet, their employment required them to leave on a trip to Oregon the same day. Defendant mentioned, in the presence of Breanna and Nichole, that he might have time to stop at their aunt's house in Oregon. When Nichole and Breanna, who was then nine years of age, said they wanted to go on the trip, defendant agreed. At some point during this trip, Linda and Nichole left the truck at a rest stop while Breanna was sleeping on the bottom bunk. Defendant lay down on the bed with her. He put his leg over her and, when she tried to avoid him, grabbed her leg, causing her to fall.

Some months later, defendant took Breanna and her younger sister, Christine, on an overnight trip from Hemet to Los Angeles. Christine had asked to go on this trip, and because Breanna did not want her sister going by herself, she volunteered to accompany her. That night, after he had stopped to unload the truck, defendant tried to remove Breanna's pants. Later that night, when Breanna was sleeping in the bunk, appellant pressed against her and touched her in a lewd manner.

The prosecution also presented evidence at trial that defendant previously had molested two girls, each then nine years of age, in the winter of 1982–1983. One was the daughter of defendant's girlfriend, with whom he resided. The other was the daughter of a friend of defendant's, who sometimes spent the night at defendant's house.

After the preliminary hearing, defense counsel filed a motion under section 995, seeking to set aside the information on the ground that no evidence had been presented establishing that any of the offenses had taken place in Riverside County. The court denied that motion, stating that it appeared defendant had an ongoing plan and the intent to commit the alleged acts each time he picked up the children in Hemet. After presentation of the prosecution's case at trial, defense counsel moved to dismiss the counts involving Breanna based on lack of jurisdiction and venue. Defense counsel argued that the evidence did not establish that defendant had the intent to commit the offenses when he was in Riverside County or in California, because he did not invite Breanna to go on the trips to Oregon and Los Angeles; rather, the evidence established that she had volunteered to go. The court denied the motion, finding the circumstantial evidence sufficient to demonstrate that defendant intended to molest Breanna when he agreed to take the girls on the trips, particularly because he already had molested Nichole on the first trip.

Defense counsel never requested that the issues of territorial jurisdiction or venue be submitted to the jury. The court instructed the jurors that, although the information charged that the crimes occurred in Riverside County, if they found that the lewd acts occurred they did not have to decide whether these acts occurred in Riverside County. The court also instructed the jury that the question of the court's jurisdiction was not for them to decide. Defense counsel objected to the court's giving this particular instruction, but agreed that jurisdiction was not an issue for the jury.

The Court of Appeal affirmed defendant's convictions. It rejected defendant's argument that he had the right to a jury trial on the issues of venue and territorial jurisdiction, concluding that those issues do not concern the guilt or innocence of the accused.

## II.

It long has been established that a state will entertain a criminal proceeding only to enforce its own criminal laws, and will not assume authority to enforce the penal laws of other states or the federal government through criminal prosecutions in its state courts. (See *Huntington v. Attrill* (1892) 146 U.S. 657 [36 L.Ed. 1123, 13 S.Ct. 224] ["Crimes and offences against the laws of any State can only be defined, prosecuted, and pardoned by the sovereign authority of that State."].) At common law, courts applied a narrow principle of territorial jurisdiction in criminal cases and, with some exceptions, a particular crime was viewed as occurring for purposes of jurisdiction in only one location, conferring jurisdiction over the offense upon only a single state. (See 1 LaFave et al., Criminal Procedure (2d ed. 1999) § 16.4(c); Williams, *Venue and the Ambit of the Criminal Law* (1965) 81 Law Q.Rev. 518, 526; see, e.g., *State v. Hall* (1894) 114 N.C. 909 [19 S.E. 602] [North Carolina lacked jurisdiction where the defendant shot across state border, hitting and killing victim in Tennessee].) But conduct relating to criminal activity frequently is not confined to the borders of a single state, and strict application of territorial principles often can render problematic the prosecution of crimes involving more than one state. Although the constitutional limits of state courts' extraterritorial jurisdiction in criminal matters have not been precisely delineated, it is clear that states may extend their jurisdiction beyond the narrow limits imposed by the common law. For example, a state may exercise jurisdiction over criminal acts that take place outside of the state if the results of the crime are intended to, and do, cause harm within the state. (See *Strassheim v. Daily* (1911) 221 U.S. 280, 285 [55 L.Ed. 735, 31 S.Ct. 558] ["Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if [the defendant] had been present at the effect, if the State should succeed in getting him within its power"]; see also *Skiriotes v. Florida*

(1941) 313 U.S. 69, 76–79 [85 L.Ed. 1193, 61 S.Ct. 924] [state could enforce its criminal statute, which addressed subject in which state had legitimate interest, against its own citizen for conduct outside state's borders, on the high seas].)

■ Like most other states, California has addressed the problem of criminal activity that spans more than one state by adopting statutes that provide our state with broader jurisdiction over interstate crimes than existed at common law. Such laws generally "are premised on the belief that a state should have jurisdiction over those whose conduct affects persons in the state or an interest of the state, provided that it is not unjust under the circumstances to subject the defendant to the laws of the state." (Model Pen. Code & Commentaries, com. 1 to § 1.03, p. 35.) Penal Code section 27 generally permits the punishment of a defendant under California law for any crime committed "in whole or in part" in the state. (§ 27, subd. (a)(1).) In addition, sections 27 and 777b through 778b establish territorial jurisdiction for specific types of interstate situations or particular crimes. For example, a person who, acting outside the state, aids, advises, or encourages a person in the state to commit a crime in California can be punished in California in the same manner as if he or she had acted within the state. (§§ 27, subd. (a)(3), 778b.) A person who kidnaps someone in California and takes that victim to another state or country may be punished in California for any crime of violence or theft committed against the kidnap victim in the other state or country. (§ 778a, subd. (b).) Anyone who commits larceny, carjacking, or embezzlement may be punished in California if the property taken is brought into the state. (§ 27, subd. (a)(2).)

■ Of relevance to the present case, section 778a, subdivision (a) provides that if a person, "with intent to commit a crime, does any act within this state in execution or part execution of that intent, which culminates in the commission of a crime, either within or without this state, the person is punishable for that crime in this state in the same manner as if the crime had been committed entirely within this state." Under this provision, California has territorial jurisdiction over an offense if the defendant, with the requisite intent, does a preparatory act in California that is more than a de minimis act toward the eventual completion of the offense. (*People v. Morante* (1999) 20 Cal.4th 403, 436 [84 Cal.Rptr.2d 665, 975 P.2d 1071].)

None of these statutes, however, addresses the question of whether the issue of territorial jurisdiction in a criminal proceeding should be determined by the trial court or by a jury. Section 27, like sections 777b through 778b, is silent on this matter. Nor has our court ever directly addressed the question. In a number of cases, we have discussed issues related to territorial jurisdiction in the context of a jury trial and assumed that the issue properly could be

presented to the jury, but those decisions have not directly confronted the question whether a jury trial is required. (See, e.g., *People v. Anderson* (1961) 55 Cal.2d 655 [12 Cal.Rptr. 500, 361 P.2d 32].) In one case, we upheld a jury instruction that required the facts establishing territorial jurisdiction to be proved by a preponderance of the evidence rather than beyond a reasonable doubt. (*People v. Cavanaugh* (1955) 44 Cal.2d 252 [282 P.2d 53].) On the other hand, in another case the issue was decided by the trial court on a motion for entry of a judgment of acquittal pursuant to section 1118.1. (*People v. Morante, supra,* 20 Cal.4th 403, 414.) Recently, we held that a trial court was not required to instruct the jury on territorial jurisdiction sua sponte, because there was no substantial evidence that the crime was committed outside of California, but we explicitly declined to decide whether "territorial jurisdiction is a factual question for the jury." (*People v. Crew* (2003) 31 Cal.4th 822, 835 [3 Cal.Rptr.3d 733, 74 P.3d 820].)

Section 1126, which addresses the respective roles of the court and the jury in criminal cases, does not resolve the foregoing issue. The statute simply states that "questions of law are to be decided by the court, and questions of fact by the jury." Under the statutes that address territorial jurisdiction, many of the questions relating to territorial jurisdiction are factual. In the present case, for example, under section 778a, subdivision (a), jurisdiction depends upon what acts were committed within the state and whether defendant possessed the intent to commit the charged crimes when he committed the California acts. The factual nature of the issue, however, does not determine whether the issue must or should be submitted to a jury.

This court has held that the analogous issue of venue—whether a criminal action has been brought to trial in a proper county—is to be decided by the court prior to trial, not by a jury. (*People v. Posey, supra,* 32 Cal.4th 193.) Venue, like territorial jurisdiction, often involves factual issues related to the circumstances of the crime. In *Posey,* we rejected the argument that venue must be decided by a jury merely because it involves questions of fact. We observed that "although questions of fact relating to the substantive issue of guilt or innocence are within the province of the jury, questions of law concerning procedural issues that do not themselves determine guilt or innocence—including any underlying questions of fact—are within the province of the court." (*Posey, supra,* 32 Cal.4th at p. 207.) We further explained that "[f]undamentally, the distinction between questions of fact for the jury and questions of law for the court (see § 1126; Evid. Code, §§ 310, 312) turns on whether the issue presented relates to the substantive matter of guilt or innocence to be determined at trial or, instead, concerns a procedural matter that does not itself determine guilt or innocence but either precedes the trial (such as whether to change venue), affects the conduct of the trial (such as

whether to admit certain evidence), or follows the trial (such as whether to order a new trial)." (*Id.* at p. 206.)

Like venue, territorial jurisdiction frequently involves questions of fact, but it is a procedural issue that does not determine the guilt or innocence of the accused. Therefore, the reasoning we applied in *Posey* suggests that the trial court, rather than a jury, should decide the issue of territorial jurisdiction. Of course, there are differences between venue and territorial jurisdiction. As we recognized in *Posey,* venue merely establishes the appropriate place for trial and does not "implicate the trial court's fundamental jurisdiction in the sense of subject matter jurisdiction, which is the authority of the court to consider and decide the criminal action itself." (*People v. Posey, supra,* 32 Cal.4th at p. 208, italics omitted.) Territorial jurisdiction, by contrast, does implicate the authority of the court to consider and decide the criminal action. That distinction, however, is not controlling on the issue of whether a jury trial is required. The jurisdictional nature of an issue does not make it more suitable for jury determination. In fact, the contrary is true, because jurisdiction is not related to guilt or innocence.[2] (See, e.g., *Ford v. United States* (1927) 273 U.S. 593, 606 [71 L.Ed. 793, 47 S.Ct. 531] [rejecting argument that jury should have decided the question whether ship on which the defendants were arrested was seized in United States territory, noting that it "did not affect the question of the defendants' guilt or innocence. It only affected the right of the court to hold their persons for trial."].)

Trial courts routinely decide issues that determine whether the case before them can be prosecuted, even when those issues present factual as well as legal questions. For example, the court decides whether a violation of the defendant's speedy trial rights necessitates dismissal of the case, a decision that requires the court to determine the reasons for and prejudice resulting from any delay (see *People v. Martinez* (2000) 22 Cal.4th 750 [94 Cal.Rptr.2d 381, 996 P.2d 32]); the court decides whether the prosecution's misconduct that results in a mistrial bars retrial, a decision that requires findings as to the prosecutor's intent (see *People v. Batts* (2003) 30 Cal.4th 660, 666, 676 [134 Cal.Rptr.2d 67, 68 P.3d 357]);[3] and the court decides whether to dismiss an

---

[2] In a civil case, of course, personal and subject matter jurisdiction ordinarily are issues for the court, not the jury. (See, e.g., *Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1036 [25 Cal.Rptr.2d 539, 863 P.2d 784] [subject matter jurisdiction may be challenged by demurrer, motion to strike, motion for judgment on pleadings, motion for summary judgment, or in an answer; personal jurisdiction may be challenged by motion to quash service of summons]; *Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222 [254 Cal.Rptr. 410] [issues of fact raised by conflicting declarations on motion to quash for lack of personal jurisdiction should be resolved by trial court under applicable evidentiary rules].)

[3] In *Batts,* we noted but did not decide the argument of amicus curiae, the Los Angeles District Attorney, that a double jeopardy defense based upon a prosecutor's intent presents a

action because the prosecution has destroyed evidence, which requires a decision whether the defendant was prejudiced (see *People v. Zapien* (1993) 4 Cal.4th 929, 966–968 [17 Cal.Rptr.2d 122, 846 P.2d 704]). We specifically have held that the issue whether a defendant would not have been prosecuted for the charged offense except for invidious discrimination—which, if established, prevents prosecution for that offense—is to be decided by the court, not the jury. (*Murgia v. Municipal Court* (1975) 15 Cal.3d 286, 293, fn. 4 [124 Cal.Rptr. 204, 540 P.2d 44].) The question of discriminatory prosecution does not relate to the guilt or innocence of the accused, "but rather addresses itself to a constitutional defect in the institution of the prosecution." (*Ibid.*, quoting *United States v. Berrigan* (3d Cir. 1973) 482 F.2d 171, 175.) Similarly, in *People v. McGee* (1977) 19 Cal.3d 948 [140 Cal.Rptr. 657, 568 P.2d 382], we held that the state's failure to seek restitution as required by statute precluded a prosecution for welfare fraud, and determined that the issue whether the state had complied with the statutory requirement was one for the court, not the jury. Comparing the case to *Murgia*, we concluded that "the question of whether or not the state has sought restitution 'relates not to the guilt or innocence of the accused' but to the question of a statutory defect in the institution of the prosecution, and hence we hold that the issue is properly resolved by the trial court . . . ." (*McGee, supra,* at p. 968.)

Territorial jurisdiction establishes the court's authority to try the defendant, not the defendant's culpability. If territorial jurisdiction were lacking in California for a crime committed by a defendant, it generally would exist in another state; the absence of territorial jurisdiction does not signify the defendant is not culpable. Although it is true that a defendant cannot be convicted of a crime unless territorial jurisdiction exists, neither should he or she be acquitted because territorial jurisdiction is lacking. Without jurisdiction, a court has no authority to act in the matter and cannot enter judgment either in favor of or against the defendant. Thus, if it appears, after a jury has been empaneled, that a court is without jurisdiction to try the defendant, the court is directed by statute to discharge the jury and the defendant (§§ 1113, 1114), not to enter judgment in the defendant's favor. (Compare § 1118.1, which directs the court to enter a judgment of acquittal upon concluding the evidence is insufficient to sustain a conviction; see also *State v. Batdorf* (1977) 293 N.C. 486 [238 S.E.2d 497, 503] [jury should not

---

question of fact for the jury. (*People v. Batts, supra,* 30 Cal.4th at p. 697, fn. 28.) That argument was based on a footnote in *Stone v. Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809] that attempted to reconcile the rule that a writ of prohibition is an appropriate remedy to prevent retrial on a claim of former jeopardy with earlier cases that required a jury finding on factual issues raised by a plea of former jeopardy. (*Id.* at p. 509, fn. 1; see, e.g., *People v. Greer* (1947) 30 Cal.2d 589, 595–597 [184 P.2d 512].) We commented, however, that we had "grave doubts" that factual issues involving the prosecution's intent, in the context of a double jeopardy issue, should be decided by a jury rather than by a judge. (*Batts, supra,* 30 Cal.4th at p. 697, fn. 28.)

acquit the defendant if it finds crime was committed outside state; rather, it should return special verdict of absence of jurisdiction]; *People v. Holt* (1982) 91 Ill.2d 480 [440 N.E.2d. 102, 108, 64 Ill.Dec. 550] [murder conviction and death judgment reversed and murder charges dismissed for lack of territorial jurisdiction].)

The courts of other states are divided on the question whether the determination of territorial jurisdiction in a criminal case is for the jury or the trial court. Decisions in some states have concluded that when the facts underlying territorial jurisdiction are in dispute, the issue must be resolved by a jury.[4] Generally, the courts rendering those decisions have provided little analysis, relying instead on the weight of authority from other courts and on the general principle that factual issues are for the jury. Several jurisdictions, however, have concluded that the court, not the jury, decides whether territorial jurisdiction has been established in a criminal case.[5] These decisions recognize that the factual nature of the issue is not determinative and that factual issues must be resolved by the jury only if they affect the determination of the defendant's guilt or innocence. (See, e.g., *State v. Beverly, supra,* 618 A.2d 1335, 1338 [territorial jurisdiction is issue for court, and the defendant's right to jury trial does not encompass issues that are not relevant to guilt or innocence].)

Practical considerations also support the conclusion that the issue of territorial jurisdiction should be decided by the court. Our comments in *People v. Simon* (2001) 25 Cal.4th 1082 [108 Cal.Rptr.2d 385, 25 P.3d 598] on the problems of treating venue as a jury issue also are applicable to territorial jurisdiction: "[U]nless the jury is instructed to return a separate special verdict on the issue of venue before returning a general verdict, a finding that the proceeding has been brought in an improper venue can result in an unwarranted acquittal, rather than in a new trial in an authorized venue." (*Id.*, at p. 1110, fn. 18.) Furthermore, as the Court of Appeal commented in the present case, "a challenge to a court's fundamental subject matter jurisdiction strikes at the very foundation of the court's authority and therefore should be determined pretrial by the court as a matter of law.

---

[4] See *Arizona v. Willoughby* (1995) 181 Ariz. 530 [892 P.2d 1319]; *People v. Cullen* (Colo. 1984) 695 P.2d 750; *Lane v. State* (Fla. 1980) 388 So.2d 1022; *McKinney v. Indiana* (Ind. 1990) 553 N.E.2d 860; *State v. Liggins* (Iowa 1994) 524 N.W.2d 181; *State v. Butler* (1999) 353 Md. 67 [724 A.2d 657]; *State v. Batdorf, supra,* 238 S.E.2d 497; *People v. McLaughlin* (1992) 80 N.Y.2d 466 [606 N.E.2d 1357, 591 N.Y.S.2d 966]; *Commonwealth v. Bighum* (1973) 452 Pa. 554 [307 A.2d 255]; *State v. Beall* (Tenn. 1986) 729 S.W.2d 270; *State v. L.J.M.* (1995) 79 Wn.App. 133 [900 P.2d 1119]; see also Model Pen. Code, § 1.13(9)(e) (" 'element of an offense' means (i) such conduct or (ii) such attendant circumstances or (iii) such a result of conduct as . . . (e) establishes jurisdiction or venue").

[5] See *State v. Beverly* (1993) 224 Conn. 372 [618 A.2d 1335, 1338]; *Mitchell v. United States* (D.C. 1990) 569 A.2d 177, 180; *State v. Aguilar* (1987) 85 Ore.App. 410 [736 P.2d 620, 621].

Treating jurisdiction as a threshold matter that should be challenged prior to trial affords substantial procedural safeguards for the defendant and serves the interests of judicial efficiency and economy. If only a jury could determine subject matter jurisdiction, a defendant would always be put through the expense, anxiety, and uncertainty of a trial and the only mechanism to challenge jurisdiction would be an appeal after the conclusion of trial." By contrast, if the issue can be resolved by the court before trial, the defendant will have the opportunity to seek immediate review through a writ proceeding.

Defendant contends that the facts establishing territorial jurisdiction do affect the defendant's guilt or innocence. According to defendant, jurisdictional facts relate to two issues. One is procedural—the court's authority to hear the case. The second is substantive—proof that the defendant committed a crime. Defendant maintains that although the court can resolve the first issue, the jury must resolve the second. Defendant points to language in sections 27 and 778a to support his contention that the Legislature intended these statutes to establish substantive requirements for criminal liability that must be proved as elements of the crime. Defendant relies upon the circumstances that neither statute refers specifically to jurisdiction and that both are drafted in terms of liability and punishment, as opposed to the authority of the court. Section 27 states, "The following persons *are liable to punishment under the laws of this state* . . . ." (§ 27, subd. (a), italics added.) Similarly, section 778a states that when a person, with intent to commit a crime, does any act within this state in execution of that intent, "the person *is punishable* for that crime in this state in the same manner as if the crime had been committed entirely within this state." (§ 778a, subd. (a), italics added.) Furthermore, a crime is defined in part as "an act committed or omitted in violation of a law forbidding or commanding it . . . ." (§ 15.) Defendant claims that without proof that a defendant's conduct is punishable under California law, there is no proof that the defendant's acts constitute a crime. If viewed in this manner, territorial jurisdiction would be fundamentally different from venue, because a criminal act committed within the boundaries of the state is a crime regardless of whether it was committed in one county or another. Thus, although venue determines only the place of trial, defendant argues that territorial jurisdiction determines the guilt or innocence of the accused.

█ Defendant's argument is not persuasive, because it misperceives the nature and effect of the relevant statutory provisions. We have referred to sections 27 and 778a as "statutes defining jurisdiction over criminal acts." (*People v. Morante, supra,* 20 Cal.4th at pp. 418, 435.) The circumstance that the language of the statutes refers to the liability of persons to punishment under California law, rather than the authority of California courts to hold those persons criminally liable, does not signify that the Legislature intended

to transform jurisdictional facts into substantive elements of the offense. The Legislature generally employs different language when it establishes the elements of a crime. Substantive criminal statutes normally state that any person who commits the proscribed act *"shall* be punished" in a specified manner or *"is guilty of"* a specified crime or category of crime.

█ It has been observed that the concept of territorial jurisdiction in criminal cases generally merges two issues that, in a civil case, are entirely separate: (1) whether the state's courts have jurisdiction to try a case involving interstate activities, and (2) whether the law of the state applies to those interstate activities. (Model Pen. Code & Commentaries, explanatory note to § 1.03, p. 34.)[6] In a criminal case, both of those issues are merged in the concept of territorial jurisdiction, because the court of one state will not apply or enforce the criminal laws of another state (see Rest., Conf. of Laws, § 89),[7] and thus a criminal defendant can be tried in a California court only if the laws of this state apply to his or her conduct or activities. The words employed by the Legislature in sections 27 and 778a are appropriate for specifying the circumstances under which California penal laws will apply to criminal activity that spans more than one state. Indeed, section 27 plainly refers to the applicability of California law, stating that persons who commit crimes in part in this state are liable to punishment "under the laws of this state." By specifying the types of interstate criminal activities to which California penal laws apply, sections 27 and 778a establish the jurisdiction of California courts to try persons for violating the laws of this state; these statutes do not define elements of a charged offense. Indeed, we implicitly rejected the idea that jurisdictional facts are elements of a crime when we held that jurisdictional facts need be proved only by a preponderance of the evidence and not beyond a reasonable doubt. (See *People v. Cavanaugh, supra,* 44 Cal.2d 252, 262.)[8]

---

[6] In a civil case, the analogous issues of jurisdiction and choice of law ordinarily are decided by the trial court, not the jury. (See, e.g., cases cited in fn. 2, *ante*; *Dixon Mobile Homes v. Walters* (1975) 48 Cal.App.3d 964, 967 [122 Cal.Rptr. 202] [trial bifurcated, with court deciding choice-of-law issue first and jury then rendering verdict on liability issues under applicable law].)

[7] "The authority of a state to convict under its law encompasses two legal concepts: jurisdiction and application of forum law. Unlike civil actions, where jurisdiction and choice of law are separate questions, in the administration of criminal law these concepts are merged, since it has long been a maxim of American jurisprudence that a state will not enforce the penal laws of another state." (Model Pen. Code & Commentaries, explanatory note to § 1.03, pp. 34–35.)

[8] Because no prior appellate court decision in this state established that territorial jurisdiction is an issue for the jury, we agree with the Attorney General's suggestion, made at oral argument, that our decision here need not be limited to prospective application. (Cf. *People v. Posey, supra,* 32 Cal.4th at p. 215 [because adherence to rule that venue is question for jury was long-standing and widespread, decision holding that venue is to be decided by court would be applied prospectively only].)

■ Defendant argues that he is entitled under the Sixth and Fourteenth Amendments to the federal Constitution to a jury trial on jurisdictional facts, because jurisdiction is the "functional equivalent" of an element of the crime.[9] A criminal defendant has a constitutional right to a jury trial on all the elements of the crime charged. (See *Patterson v. New York* (1977) 432 U.S. 197 [53 L.Ed.2d 281, 97 S.Ct. 2319]; *Mullaney v. Wilbur* (1975) 421 U.S. 684 [44 L.Ed.2d 508, 95 S.Ct. 1881]; *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068].) The right to a jury trial extends to the proof of any fact (except a prior conviction) that increases the maximum penalty for a crime. (*Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] [a defendant has right to jury trial on factors that are prerequisite to imposition of sentence above the standard range]; *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] [the defendant had right to jury trial on sentencing enhancement that increased maximum incarceration for offense from 10 years to 20 years]; see *People v. Sengpadychith* (2001) 26 Cal.4th 316 [109 Cal.Rptr.2d 851, 27 P.3d 739].) A fact that increases the maximum permissible punishment for a crime is the functional equivalent of an element of the crime, regardless whether that fact is defined by state law as an element of the crime or as a sentencing factor. (*Blakely, supra,* 542 U.S. 296 [124 S.Ct. 2531]; see also *Ring v. Arizona* (2002) 536 U.S. 584 [153 L.Ed.2d 556, 122 S.Ct. 2428] [a capital defendant has right to jury trial on aggravating factors that, under state law, make the defendant eligible for death penalty].) The decisions upon which defendant relies involve factual determinations that establish the level of punishment for which the defendant is eligible. They are inapplicable to the present issue. Because territorial jurisdiction is a procedural matter that relates to the authority of California courts to adjudicate the case and not to the guilt of the accused or the limit of authorized punishment, a jury trial on the factual questions that establish jurisdiction is not required by the federal Constitution.[10]

---

[9] Recognizing that his argument is somewhat inconsistent with our holding in *People v. Cavanaugh, supra,* 44 Cal.2d 252, defendant urges us to reconsider the burden of proof required for jurisdictional facts. In view of the conclusion we reach on the jury-trial issue, we see no reason to reconsider the burden of proof.

[10] Defendant also asserts that the denial of a jury trial on the issue of territorial jurisdiction violates the right to a jury trial guaranteed by article I, section 16 of the California Constitution. Defendant cites no authority, and we are aware of none, that compels the conclusion that the right to a jury trial under the California Constitution is, in the context of the issue before us here, broader than the comparable right guaranteed by the federal Constitution. We therefore reject defendant's argument to the extent it is premised upon state constitutional provisions.

## III.

Defendant additionally contends that the evidence in the present case is insufficient to support the trial court's conclusion that California had territorial jurisdiction over the offenses involving Nichole and over the offense involving Breanna that took place on the Oregon trip. As discussed above, under the applicable statute a crime may be prosecuted in a California court if the defendant, with the intent to commit a crime, does "any act within this state in execution or part execution of that intent, which culminates in the commission of a crime" outside of the state. (§ 778a, subd. (a).) The prosecution has the burden of proving the facts necessary to establish territorial jurisdiction by a preponderance of the evidence. (*People v. Cavanaugh, supra*, 44 Cal.2d at p. 262.) Section 778a is satisfied if the defendant, with the requisite intent, does a preparatory act in California that is more than a de minimis act toward the eventual completion of the offense. (*People v. Morante, supra*, 20 Cal.4th 403.)

Defendant initially raised these challenges to territorial jurisdiction before trial, in the form of a motion to set aside the information pursuant to section 995. After the presentation of evidence at trial, defendant renewed his pretrial objection that territorial jurisdiction was lacking for the counts involving Breanna, because the evidence established that defendant had not invited Breanna on the trips; rather, she had volunteered to accompany him, a circumstance that assertedly undermined the conclusion that defendant did not then possess the intent to molest her. The trial court denied the motion.

We will uphold a trial court's determination on factual issues if supported by substantial evidence and review its legal determinations independently. (See *People v. Cromer* (2001) 24 Cal.4th 889, 894 [103 Cal.Rptr.2d 23, 15 P.3d 243].) Although our prior cases do not clearly establish whether the lower court's application of the law to the facts should be reviewed independently or deferentially on the issue before us (see, e.g., *People v. Morante, supra*, 20 Cal.4th 403; *People v. Anderson, supra*, 55 Cal.2d 655), we would uphold the trial court's decision in this case under either standard.

The evidence presented at trial amply supports the conclusion that defendant formed the intent to molest the girls while he was in California, before the trips began. Linda testified that defendant suggested the idea of bringing Nichole on the first trip, even though Linda had anticipated that this trip would be a honeymoon just for the two of them. Because there was a sleeping area in the back of the truck and defendant and Linda were to take turns driving, the arrangement was likely to provide opportunities for defendant to be alone with Nichole. Defendant's past acts of child molestation also

support the inference that the idea of molesting Nichole did not first come to his mind after they had left the state. The same evidence supports the inference that defendant possessed the intent to molest Breanna when, while in California, he mentioned in her presence that he might have time to stop at her aunt's home on the upcoming trip to Oregon and thereafter agreed to let Breanna accompany him on the trip. As the trial court specifically noted, defendant's molestation of Nichole on the first trip is further circumstantial evidence of his intent regarding Breanna.

Defendant's acts of driving the girls across the state in his truck constitute sufficient conduct to establish California's jurisdiction over his crimes. These acts were not merely de minimus; they furthered the completion of the charged offenses by removing the girls from the protection of their mother and providing defendant with opportunities to be alone with each of them. Both of the victims were California residents, and California has a legitimate interest in protecting its residents from criminal conduct.

## IV.

██ Defendant claims he was denied his constitutional right to a jury trial on the matter of venue. As noted earlier in this opinion, we have held that a defendant does not have the right to have the question of venue decided by a jury; however, because our decision overruled or disapproved prior decisions, it would not be applied retroactively. (*People v. Posey, supra,* 32 Cal.4th at p. 215.) Even though defendant was entitled at the time of his pre-*Posey* trial to have a jury decide the issue of venue, he was required to submit a jury instruction to the court on that issue. (§ 1093.5; *People v. Crew, supra,* 31 Cal.4th at p. 836; *People v. Simon, supra,* 25 Cal.4th at p. 1109.) Defense counsel did not request a jury trial on the matter of venue and did not submit a proposed jury instruction to the court.[11] Under these circumstances, defendant may not complain on appeal of the trial court's failure to submit the issue to the jury.

Defendant additionally contends that the counts based on the molestation of Breanna during the third trip must be reversed, on the ground that venue was not proper in Riverside. Although the evidence did not establish the

---

[11] Defendant contends that defense counsel's failure to submit instructions on the issue of venue should not be construed as a waiver or forfeiture, because it was based on ignorance of the law rather than a deliberate choice. Defendant cites no authority to support this argument. Furthermore, because the right to a jury trial on venue, as it existed at the time of defendant's trial, was based on state case law and not a state or federal constitutional right, it could be forfeited without a personal, express waiver. (See *People v. Vera* (1997) 15 Cal.4th 269, 278 [62 Cal.Rptr.2d 754, 934 P.2d 1279] [right to jury trial on prior conviction allegations, which is purely statutory right, may be forfeited by failure to object].)

precise location where the acts took place, it does suggest that they occurred in Los Angeles, because Breanna testified they occurred after the truck was stopped and unloaded, and Los Angeles was the destination of the trip. In any event, for purposes of reviewing defendant's contention we shall assume that the acts themselves took place in Los Angeles County because, as we explain, even under such circumstances these offenses properly were tried in Riverside County.

When an "offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory."[12] (§ 781.) Section 781 is construed "liberally in order to achieve its underlying purpose, which is to expand venue beyond the single county in which a crime may be said to have been committed." (*People v. Posey, supra,* 32 Cal.4th at p. 218.) The phrase "acts or effects . . . requisite to the consummation" (*id.* at p. 219) of a crime does not require that those acts amount to an element of the crime. (See *People v. Price* (1991) 1 Cal.4th 324, 385 [3 Cal.Rptr.2d 106, 821 P.2d 610].) These words encompass preparatory acts. (*People v. Posey, supra,* 32 Cal.4th at p. 219 [telephone call made to county of venue for purpose of planning crime was sufficient preparatory act]; *Price, supra,* 1 Cal.4th at pp. 384–386 [theft of firearms in county of venue, leading to murder in another, was sufficient preparatory act].) The prosecution must prove the facts establishing venue by a preponderance of the evidence. (See *People v. Cavanaugh, supra,* 44 Cal.2d at p. 262; *People v. Carter* (1935) 10 Cal.App.2d 387 [52 P.2d 294].)

The trial court denied defendant's motion to enter a judgment of acquittal on the Los Angeles count based on lack of venue, concluding that defendant had formed the intent to molest Breanna at the outset of the trip, in Riverside County. As with the issue of territorial jurisdiction, we shall uphold the trial court's determination on factual issues if supported by substantial evidence, and review its legal determinations independently. (See *People v. Cromer, supra,* 24 Cal.4th at p. 894.) We find no error in the trial court's decision that venue was proper in Riverside County.[13] In *People v. Crew, supra,* 31 Cal.4th at page 836, we found sufficient preparatory acts to support

---

[12] "Jurisdictional territory," in this context, signifies a county. (§ 691, subd. (b).)

[13] Because venue generally was treated as an issue for the jury prior to our decision in *People v. Posey, supra,* 32 Cal.4th 193, the case law does not establish whether the trial court's ruling on venue should be reviewed under a deferential or independent standard. As we concluded regarding the court's ruling on territorial jurisdiction (*ante,* p. 1056), we would uphold the trial court's ruling that venue was proper in Riverside County under either standard.

venue in Santa Clara County, because while in Santa Clara County the defendant planned to kill the victim, he picked up the victim there, drove her to Alameda County, and, within a day or two, killed her. The circumstances supporting venue in the present case are similar. The evidence presented at trial supports the conclusion that defendant picked up Breanna from her mother's house in Riverside County with the intent to molest her, and drove her to Los Angeles County, where he had the opportunity to molest her.

Defendant contends, nevertheless, that section 781 should not be applied in this case, because a more specific statute, section 784.7, governs venue in child molestation cases. That section, as it read at the time of defendant's trial, provided, "When more than one violation of section . . . 288 . . . occurs in more than one jurisdictional territory, and the defendant and the victim are the same for all of the offenses, the jurisdiction of any of those offenses is any jurisdiction where at least one of the offenses occurred." (Stats. 1998, ch. 302, § 1, enacting Assem. Bill No. 2734 (1997–1998 Reg. Sess.) (Assembly Bill 2734).)[14] Defendant argues that because section 784.7 provides for venue only in a county in which "at least one of the offenses occurred," venue was proper only in Los Angeles County—assertedly the only county in California where a lewd act "occurred." The application of section 781, defendant argues, would conflict with section 784.7.

 If general and specific statutes dealing with the same subject are inconsistent, the specific will prevail over the general. (See Code Civ. Proc., § 1859; *People v. Price, supra,* 1 Cal.4th at p. 385.) But if the two statutes can be harmonized, they are given concurrent effect. (*People v. Price, supra,* 1 Cal.4th at p. 385; see also *People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 487–488 [204 Cal.Rptr. 897, 683 P.2d 1150].) We rejected an argument in *Price* that section 781 should not apply in a murder case because a specific statute addresses venue in murder cases. Section 790 provides that a charge of murder may be tried in a county where the fatal injury occurred, the victim dies, or the victim's body was found. We concluded that the two statutes are not inconsistent and that both are proper sources of territorial jurisdiction for trying the crime of murder.

---

[14] Section 784.7 has since been amended to (1) eliminate the requirement that all offenses involve the same defendant and the same victim and (2) provide specific procedures for consolidating charges from different counties, which require written agreement of the district attorney of each county. (See Stats. 2002, ch. 194, § 2.)

■ Likewise, we find no conflict between section 781 and section 784.7. Section 781 addresses venue for crimes that are committed in part in one county and in part in another. Section 784.7 addresses an entirely different matter. It expands venue for specified offenses to permit crimes involving the same defendant and the same victim that occurred in different counties to be tried in the same county. The purpose of section 784.7 is to permit offenses occurring in different counties to be consolidated so that a victim may be spared having to testify in multiple trials in different counties.[15] Permitting an offense to be tried in either of two counties under section 781 does not conflict with the language or purpose of section 784.7.[16]

---

[15] The analysis of proposed section 784.7 provided to the Assembly quotes the author as stating that the bill "provides for the ability to combine the trials of these crimes into one. This will reduce to one the number of trials a victim must testify at, and reduce the overall time that they will be involved in trial." (Assem. Com. on Public Safety, Analysis of Assem. Bill 2734, as amended Apr. 13, 1998, p. 2; see also Sen. Rules Com., 3d reading analysis of Assem. Bill 2734, as amended June 15, 1998 [" 'This will save the victim from testifying in the multiple trials over several years. Additionally, this will provide a cost savings to the trial court system by reducing the number of trials' "].)

Furthermore, in light of the purpose of section 784.7, it is doubtful the phrase "any jurisdiction where at least one of the offenses *occurred*" (italics added) properly should be interpreted, as defendant suggests, to apply narrowly only to any county in which at least one of the offenses actually was committed or completed, rather than to any county in which sufficient acts occurred so that trial of at least one of the offenses was proper in that county, under the applicable venue statutes.

[16] Because we conclude that venue was proper under section 781, we need not determine whether, as the Attorney General argues, venue also was proper under section 783, which provides that when an offense is committed in California in a motor vehicle, "the jurisdiction is in any competent court, through, on, or over the jurisdictional territory of which the . . . motor vehicle . . . passes in the course of its . . . trip, or in the jurisdictional territory of which the . . . trip terminates." We held in *People v. Bradford* (1976) 17 Cal.3d 8 [130 Cal.Rptr. 129, 549 P.2d 1225] that section 783 did not apply to an offense that took place outside the vehicle and at an identifiable place along the highway, concluding that the purpose of section 783 was to "assure that venue will lie somewhere when the exact site of an offense cannot be ascertained because it was committed in a moving vehicle." (*Bradford*, at p. 16.) Our narrow construction of section 783 in *Bradford* was supported by the importance of the right, under both the common law and the Constitution, to be tried by a jury drawn from the vicinage. (*Bradford*, at pp. 15–16.) The Attorney General argues that *Bradford* should be reconsidered in light of our decision in *Price v. Superior Court* (2001) 25 Cal.4th 1046 [108 Cal.Rptr.2d 409, 25 P.3d 618], that vicinage is not a fundamental aspect of the right to a jury trial and that the vicinage clause of the Sixth Amendment to the federal Constitution does not apply to a state criminal trial. The Attorney General further argues that section 783 should apply where, as in the present case, the offenses took place inside the vehicle when the vehicle was stopped at an identifiable place. As noted, however, we need not resolve those issues here.

## V.

For the reasons stated above, the judgment of the Court of Appeal is affirmed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.

Appellant's petition for a rehearing was denied March 16, 2005. Brown, J., did not participate therein.