Filed 6/18/13  Certified for publication 7/17/13 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MICHAEL FORTNER,<br><br>       Petitioner,<br><br>       v.<br><br>THE SUPERIOR COURT OF<br>MONTEREY COUNTY,<br><br>       Respondent;<br><br>THE PEOPLE,<br><br>       Real Party in Interest. | No. H038353<br>(Monterey County<br>Super. Ct. No. SS112116) |

The issue in this case is whether the Monterey County Superior Court has territorial jurisdiction over criminal charges against petitioner Michael Fortner arising from alleged acts of domestic violence and mayhem that occurred in Hawaii. These counts are charged in an information that also charges Fortner with acts of domestic violence against the same victim in California more than a year later. The superior court overruled Fortner's demurrer and denied his motion to dismiss. It found that it did have jurisdiction over the Hawaii offenses. Fortner seeks writ relief from the superior court's denial of his motion to dismiss. We conclude that the superior court's order is not supported by substantial evidence, and we grant relief.

# I. Evidence at Preliminary Examination

Doe and Fortner lived together in 2010. They argued in early 2010 after Doe learned that Fortner had utilized prostitutes in the past. There was no physical violence at that time. While they were on vacation in Hawaii in April 2010, Fortner called Doe "an ugly fat cow." She asked him "if he thought that the hooker was better than me." Fortner responded in the affirmative. He grabbed Doe's phone and threw it off the hotel room's balcony. She tried to grab his phone and do the same, and they got into "a scuffle." They pushed each other, and Doe ran into a table. She grabbed a cup and threw it at him. The cup broke on the floor. Fortner proceeded to punch Doe in the face with a closed fist. She lost consciousness.

Doe initially told hotel staff in Hawaii, who inquired about the injury to her face, that "my boyfriend did this." The hotel contacted the police. Doe subsequently told hotel staff and the police in Hawaii that she had fallen and injured herself. They returned from Hawaii a couple of days later, and Doe sought medical attention in Monterey for an injury to her left eye caused by the punch. Her eye was painful and sensitive to light, and she could not see out of it even after surgery on it to repair the damage. Her eye, which had suffered a partially detached retina, was permanently damaged. She was essentially blind in that eye. Doe falsely told the eye doctor that she had injured her eye falling off a horse in Hawaii.

Doe married Fortner in the fall of 2010. On November 4, 2011, Fortner committed criminal acts against her in the City of Marina in Monterey County. Fortner's November 2011 acts were spurred by his pique at the fact that she was late coming home from work. After a verbal argument, Fortner threw her down on the couch, put his hands around her throat, and squeezed until Doe lost consciousness. When she regained consciousness, she got up. They continued to argue, and Fortner made threats against Doe's adult sons. Doe ended up on the floor. Fortner again put his hands around her throat, and she again lost consciousness. She regained consciousness when he slapped

2

her. He told her "to get out," and she agreed to do so. Fortner asked Doe " 'Do you want me to tie you up?' " Doe "giggled," and "that incident ended." Doe did not contact the police until a couple of days later because she "thought it was going to be okay" and she "was going to be able to just let that incident go." She eventually called the police because she was concerned about her sons. After Fortner's arrest, he violated a protective order by repeatedly contacting Doe.

## II. Procedural Background

Fortner was charged by amended complaint with numerous charges arising from the November 2011 incident, violations of the protective order, and two counts arising from the April 2010 incident in Hawaii. The April 2010 counts alleged that Fortner had committed mayhem (Pen. Code, § 203)[1] and inflicted corporal injury on a cohabitant (§ 273.5, subd. (a)), and it further alleged that he had personally inflicted great bodily injury (§ 12022.7, subd. (e)) in the commission of the latter offense.

Fortner was held to answer on all counts. He filed a demurrer challenging the Hawaii counts on the ground that the court lacked jurisdiction over those offenses. The court overruled the demurrer. It reasoned that it had jurisdiction over the Hawaii offenses because Doe's injury had an impact on her in California.

After an information was filed charging all of these counts, Fortner moved to dismiss the Hawaii counts on the ground that the court lacked jurisdiction over them. The court denied the motion. Fortner filed a petition in this court seeking writ review of that ruling. We issued an order to show cause, and the prosecution filed a return. Fortner filed a reply, and we held oral argument in the matter.

---

[1] Subsequent references are to the Penal Code unless otherwise specified.

3

### III. Analysis

Trial courts decide issues of territorial jurisdiction by applying a preponderance of the evidence standard of proof. (*People v. Cavanaugh* (1955) 44 Cal.2d 252, 262.) Although we defer to the superior court's factual findings, it is unclear whether we exercise independent or deferential review over the superior court's application of the law to the facts in this situation. (*People v. Betts* (2005) 34 Cal.4th 1039, 1055 (*Betts*).) As the superior court's ruling is not supported by substantial evidence, it was erroneous under either standard of review.

The United States Constitution does not prohibit a state from "exercis[ing] jurisdiction over criminal acts that take place outside of the state if the results of the crime are intended to, and do, cause harm within the state." (*Betts*, *supra*, 34 Cal.4th at p. 1046.) California law generally provides that, "*except as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed.*" (§ 777, italics added.) However, California has enacted a group of statutes to "establish territorial jurisdiction for specific types of interstate situations or particular crimes." (*Betts*, at p. 1047.) Here, the only potentially applicable statutes " 'defining jurisdiction over criminal acts' " are sections 27, 778, and 778a. (*Betts*, at p. 1052.)

Section 27 provides: "The following persons are liable to punishment under the laws of this state: [¶] . . . All persons who commit, in whole or in part, any crime within this state." (§ 27, subd. (a)(1).) Thus, the question under section 27 is whether Fortner "commit[ted]" any "part" of the Hawaii offenses in California. No evidence was presented at the preliminary examination that any "part" of the Hawaii offenses was "commit[ted]" by Fortner in California. The sole criminal act underlying the Hawaii offenses was Fortner's single punch to Doe's face in Hawaii. The superior court could not have found jurisdiction under section 27.

Section 778 provides: "When the commission of a public offense, commenced without the State, is consummated within its boundaries by a defendant, himself outside the State, through the intervention of an innocent or guilty agent or any other means proceeding directly from said defendant, he is liable to punishment therefor in this State in any competent court within the jurisdictional territory of which the offense is consummated." (§ 778.) The question under section 778 is whether Fortner "commenced" the Hawaii offenses in Hawaii and then "consummated" those offenses in California. While the Hawaii offenses indisputably "commenced" in Hawaii, no evidence was presented that something subsequently occurred in California that can be remotely characterized as the "consummat[ion]" of the Hawaii offenses. The Hawaii offenses were indisputably completed in Hawaii. Although the prosecution points to Doe's eye injury as the "consummat[ion]" of the Hawaii offenses, no evidence was presented that this injury occurred anywhere other than in Hawaii as the immediate effect of Fortner's punch to Doe's face. The fact that Doe subsequently *sought medical attention* in California did nothing to show that *the offenses* were *consummated* in California. Jurisdiction under section 778 was not supported by substantial evidence.

Section 778a provides: "Whenever a person, with intent to commit a crime, does any act within this state in execution or part execution of that intent, which culminates in the commission of a crime, either within or without this state, the person is punishable for that crime in this state in the same manner as if the crime had been committed entirely within this state." (§ 778a, subd. (a).) Under section 778a, the question is whether Fortner, with the intent to commit the Hawaii offenses, did "any act" in California that "culminate[d]" in the Hawaii offenses. "Under [section 778a], California has territorial jurisdiction over an offense if the defendant, with the requisite intent, does a preparatory act in California that is more than a de minimis act toward the eventual completion of the offense." (*Betts*, *supra*, 34 Cal.4th at p. 1047; *People v. Brown* (2001) 91 Cal.App.4th 256, 266.)

5

The prosecution did not present any evidence that Fortner, with the intent to commit the Hawaii offenses, did a "preparatory act" in California that "culminate[d]" in the Hawaii offenses.  (*Betts*, *supra*, 34 Cal.4th at p. 1047; § 778a, subd. (a).)  The Hawaii offenses indisputably arose from a spontaneous argument that began in Hawaii.  The mere fact that this argument included mention of a prostitute, as had an earlier argument in California, did not transform the earlier argument into a *preparatory act by Fortner*.  It was Doe, not Fortner, who brought up the subject of the prostitute during the Hawaii argument.  No evidence was presented from which one could infer that *Fortner* had intentionally brought up prostitutes during the *earlier* argument so as to prepare for the Hawaii argument with the intent of punching Doe in Hawaii when *she* mentioned a prostitute.[2]  Consequently, there was no evidence to support jurisdiction under section 778a.

The prosecution contends that jurisdiction was supported by evidence that Fortner intended to cause harm in California because he "chose to exercise control over Jane Doe by verbal and physical abuse."  In the prosecution's view, territorial jurisdiction was established because Fortner "intended the result [of the Hawaii offenses] to have an ongoing effect on the behavior of Jane Doe, not only in Hawaii but when they returned to the State of California."  The California statutes defining territorial jurisdiction in this state do not extend as far as the prosecution desires.  The mere fact that a crime perpetrated in another state will affect the victim's "behavior" when the victim returns to California, even if intended to do so by the perpetrator, does not establish that the *crime* was "consummated" in California or that any "part" of the *crime* occurred in California.  Even if we accept the prosecution's assertion that every act of domestic violence is

---

[2]     While the couple had argued about prostitutes previously, the Hawaii argument was not about Fortner's past use of prostitutes, but about Fortner's insulting Doe's appearance and negatively comparing Doe's appearance to that of a prostitute he had previously utilized.  The connection between the two arguments was tangential.

6

necessarily intended to subjugate the victim in the future, thereby causing continuing "harm" to the victim wherever the victim may go, that does not satisfy the statutory prerequisites for territorial jurisdiction in California.

The prosecution's reliance on language in *Strassheim v. Daily* (1911) 221 U.S. 280 (*Strassheim*) is misplaced. *Strassheim* was a case in which the issue was whether Michigan could prosecute Daily as a "fugitive from justice." While in Illinois, Daily had offered a bribe to a Michigan official in Michigan to facilitate the fraudulent sale in Michigan of used machinery as new. Daily thereafter went to Michigan to finalize the sale and then returned to Illinois and transmitted the bribe to the official in Michigan. The United States Supreme Court held that Daily could be prosecuted by Michigan as a fugitive from justice. "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect, if the State should succeed in getting him within its power."[3] (*Strassheim*, at p. 285.) "[T]he criminal need not do within the State every act necessary to complete the crime. If he does there an overt act which is and is intended to be a material step toward accomplishing the crime, and then absents himself from the State and does the rest elsewhere, he becomes a fugitive from justice, when the crime is complete, if not before." (*Ibid.*)

In *Betts*, the California Supreme Court cited *Strassheim* as support for the proposition that the federal Constitution did not prohibit "a state [from exercising] jurisdiction over criminal acts that take place outside of the state if the results of the crime are intended to, and do, cause harm within the state." (*Betts*, *supra*, 34 Cal.4th at p. 1046.) However, the California Supreme Court in *Betts* limited its analysis to the

---

[3]    This language has been referred to as delineating "'the objective territorial principle' or 'detrimental effects' theory of extraterritorial criminal jurisdiction." (*Hageseth v. Superior Court* (2007) 150 Cal.App.4th 1399, 1412.)

7

*statutes* that California has enacted to extend its territorial jurisdiction.  It did not suggest that California's territorial jurisdiction extends *beyond* the reach of these statutes.  A California court's territorial jurisdiction is defined by statute, not by the potential limits of a state's territorial jurisdiction delineated in *Strassheim*.

In any case, *Strassheim* does not support the superior court's exercise of territorial jurisdiction in this case any more than the applicable California statutes do.  No evidence was presented that Fortner did any "overt act" in California "intended to be a material step toward" committing the Hawaii offenses.  The prosecution also failed to present any evidence that Fortner intended for his act of punching Doe in Hawaii to produce "detrimental effects" in California rather than in Hawaii.  We do not understand *Strassheim* to extend (or permit the extension of) territorial jurisdiction under the "detrimental effects" theory to any state where an injured crime victim may travel after the completion of the crime.

Since no evidence supports the superior court's finding that it has territorial jurisdiction over the Hawaii offenses, writ relief is appropriate.


## IV.  Disposition

Let a peremptory writ of mandate issue directing the superior court to vacate its May 11, 2012 order denying Fortner's motion to dismiss the Hawaii counts and to enter a new order granting that motion.  The temporary stay order is vacated.


Mihara, J.

WE CONCUR:
_____

Elia, Acting P. J.


_____

Márquez, J.

8

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MICHAEL FORTNER, | No. H038353 |
| Petitioner, | (Monterey County Super. Ct. No. SS112116) |
| v. | |
| THE SUPERIOR COURT OF MONTEREY COUNTY, | ORDER GRANTING REQUEST FOR PUBLICATION |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

BY THE COURT:

Pursuant to California Rules of Court, rule 8.1105(b), the request for publication is hereby granted. It is ordered that the opinion in this matter, filed on June 18, 2013, shall be certified for publication.

Date: _____

Mihara, J.

_____

Elia, Acting P. J.

_____

Márquez, J.

Trial Court:                              Monterey County Superior Court


Trial Judge:                              Honorable Adrienne M. Grover


Attorney for Petitioner:                  James S. Egar
                                          Monterey County Public Defender

                                          Donald Earl Landis, Jr.
                                          Monterey County Assistant Public Defender


Attorney for Real Party in Interest:      Dean D. Flippo
                                          Monterey County District Attorney

                                          Elaine Susan McCleaf
                                          Monterey County Deputy District Attorney