Filed 1/15/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


**DONNA STOFER,**

    **Plaintiff and Appellant,**                     **A139385**

    **v.**                                     **(Contra Costa County**
                                             **Super. Ct. No.**

**SHAPELL INDUSTRIES, INC.,**          **MSC10-00598)**

    **Defendant and Respondent.**
_____/


    Plaintiff Donna Stofer (plaintiff) purchased a home from Dr. Marcus F. Laux. Almost two years later, she sued the homebuilder, Shapell Industries, Inc. (Shapell), for strict liability, negligence, and fraudulent concealment. Plaintiff claimed Shapell built the home on unstable and uncompacted "fill" soil and with an inadequate foundation, causing "substantial differential movement" and numerous defects such as cracked floors, walls, and ceilings.

    Shapell moved for summary judgment, contending it did not conceal any material information and plaintiff did not have standing to sue because her claims accrued while Dr. Laux owned the home.[1] The trial court granted the motion as to plaintiff's fraudulent

---

[1]    In the construction defect context, what the trial court and the parties refer to as "'standing'" is "more properly phrased as when a cause of action for design or construction defects accrues and who then owns it [ ] or . . . who doesn't own it." (*Krusi v. S.J. Amoroso Construction Co.* (2000) 81 Cal.App.4th 995, 999 (*Krusi*), italics omitted.) We refer to the issue as one of accrual — i.e., whether plaintiff owns the causes of action against Shapell.

1

concealment claim. It denied the motion as to plaintiff's other claims, concluding there was a triable issue of material fact regarding whether plaintiff "own[ed] . . . any claims regarding defects in the design and construction of the home[.]" The court held a bench trial on the accrual issue, and entered judgment for Shapell, concluding plaintiff had "no standing to sue" because her claims accrued when Dr. Laux owned the home and he did not assign the claims to plaintiff.

Plaintiff appeals. She contends the order granting summary adjudication on her fraudulent concealment claim must be reversed. We agree. Construing the facts in a light most favorable to plaintiff and resolving evidentiary doubts in her favor, we conclude there is a triable issue of material fact regarding whether Shapell fraudulently concealed information about the property's soil conditions. Accordingly, we reverse the grant of summary adjudication on plaintiff's fraudulent concealment claim.

Plaintiff also contends the judgment must be reversed because she was entitled to have a jury determine the disputed factual issues of "when and to whom the causes of action accrued." We agree. A trial court may decide whether a cause of action for construction defect accrues to the plaintiff where the facts underlying that determination are undisputed. (See *Krusi, supra,* 81 Cal.App.4th at p. 1006.) But where — as here — the material facts regarding accrual turn on disputed facts or require credibility determinations, the jury must make these factual findings "before the trial court decides whether the facts, as determined by the jury" establish ownership of the causes of action as an issue of law. (*People v. Superior Court* (*Plascencia*) (2002) 103 Cal.App.4th 409, 424 (*Plascencia*).) Accordingly, we reverse the judgment for Shapell.

FACTUAL AND PROCEDURAL BACKGROUND

Shapell built a home on Velvet Leaf Circle in a residential subdivision in San Ramon for Timothy Alan Wright, then Shapell's Assistant General Superintendent and Assistant Vice President of Construction. Wright oversaw the construction of the home and he and his wife purchased it from Shapell in December 2002. The transaction was informal: Shapell transferred title to the property without "formal disclosures that would be transmitted in a more conventional transaction." (See Civ. Code, § 1102 et seq.)

2

Wright and his wife sold the home to Dr. Laux in 2004. In the Real Estate Transfer Disclosure Statement prepared as part of the sale to Dr. Laux, Wright stated he was unaware of the presence of fill soil on the property. When he owned the home, Dr. Laux submitted multiple warranty repair requests to Shapell for problems ranging from cracked sidewalks and exterior stucco to issues with the home's windows and doors. Dr. Laux sold the home to plaintiff in 2008. He gave plaintiff a $2,000 credit against the purchase price for minor repair items, not due to a perceived deficiency in the condition of the soil or foundation. Dr. Laux wrote a letter to plaintiff at the time of sale expressing his love for the home and stating "it has served us more than well. This house has made living here a rewarding joy."

In 2010, plaintiff sued Shapell for strict liability, negligence, and fraudulent concealment, alleging "defective soil conditions" heaved the home's foundation and damaged "all of the structures on the lot[.]" The operative complaint alleged the soil conditions were defective in part because the property contained "25 to 30 feet of highly differential fill; the soil at the Property has unusually high plasticity; the fill at the Property fails to meet minimum engineering compaction standards[.]" The operative complaint also alleged the home suffered from numerous defects, including cracked floors, walls and ceilings, unlevel floors, and problems with the pool and pool deck. Plaintiff alleged she noticed these "dramatic changes" after she purchased the home.

The fraudulent concealment cause of action alleged Shapell hired ENGEO Incorporated (Engeo) as a soil engineer and that Engeo advised Shapell of the "highly differential, high plasticity fill soil conditions" on the property in 1995 and 1999 reports. Plaintiff alleged Shapell concealed this information from its structural engineer, Shaer-K Engineering (Shaer-K) and, as a result, Shaer-K "did not take into account these soil conditions when designing the foundations" for the structures built on the property. Because Shapell intentionally concealed the soil conditions from Shaer-K, all of the buildings on the property were "built on fill without using a proper design methodology to provide the buildings the proper support[.]" Plaintiff also alleged Shapell had a duty to

3

disclose "highly differential fill soil conditions and the inadequate foundation" to Wright but concealed this information from him to induce him to buy the property.

***Shapell's Motion for Summary Judgment/Adjudication and Plaintiff's Opposition***

As relevant here, Shapell moved for summary judgment/adjudication on the following grounds:

A.      Fraudulent Concealment

In its motion for summary adjudication on plaintiff's fraudulent concealment claim, Shapell argued: (1) there was no evidence it concealed or suppressed the Engeo reports from Shaer-K or Wright; and (2) the soil conditions were disclosed to plaintiff before she bought the home. Shapell supported its motion with following evidence:

- Shaer-K's sole owner and employee, Karen Serke, contracted with Wright in April 2002 to provide architectural engineering and design services for the construction of the home.[2] The contract required Wright to "provide surveying and/or geotechnical engineering services upon request . . . to support the structural design." Serke received unspecified Engeo "soils reports for the project and used them in preparation of [her] structural calculations for . . . Wright's residence[.]"

- Wright knew the property contained fill, had been graded, and was not "in a natural state" when construction began. He provided Serke with whatever information she requested, including the building plans and Engeo's "soils sheet."

- Plaintiff signed a statewide buyer and seller advisory form before she purchased the home advising her "'real estate in California is subject to settling, slippage, contraction, expansion, subsidence . . . and other land movement. The Property may be constructed on fill or improperly compacted soil and may have inadequate drainage capability. Any of these matters can cause structural problems to improvements on the Property.'" Plaintiff also signed a buyer's inspection advisory from the California Association of Realtors advising her to investigate the entire property, including "Soil

---

[2] The contract lists Wright as the homeowner, but he signed the contract as a representative of Shapell, using the title of "Asst. V.P." because he did not own the property when he entered the contract.

Stability: Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage. (Geotechnical engineers are best suited to determine such conditions, causes and remedies)."

- Before she bought the home, plaintiff received a professional real estate inspection report (prepared in 2004, when Wright sold the home to Dr. Laux) stating the home was "located in an area where the soil condition is of an expansive nature. We believe that some building and site concrete movement will always occur as the soils moisture content changes from season to season. The method of construction used when this structure was built seems to have the inherent characteristic of slight structural movement."

- The final subdivision public report lodged with the California Department of Real Estate in 2001 stating some lots in the subdivision "contain[ed] filled ground in excess of two feet. The information concerning filled ground and soil conditions is available at the City of San Ramon Building Department."

In opposition, plaintiff argued Shapell knew of the existence of fill on the property and failed to disclose the information to Shaer-K or Wright. She contended the statements in the statewide buyer and seller advisory, 2004 professional real estate inspection report, and final subdivision public report were "no substitute for proper disclosure of specific information known to Shapell" regarding the property. She offered the following evidence in opposition:

- Engeo's September 1992 and September 1999 reports notifying Shapell of the property's soil condition. The September 1992 report stated a "'major area of concern regarding the project is the expansive nature of the native soil and bedrock. The clayey soil and claystone at the site display moderate to high Plasticity Indices which is an indication of moderate to extremely high potential for shrink-swell behavior.'" The September 1999 report stated "differential fill subexcavation was not performed within these subdivisions. Differential fill conditions on [the property] will need to be addressed during foundation design review." The September 1999 report referenced Engeo's May 1999 report, which stated the property contained up to 24 meters of fill and also advised

5

"differential fill conditions . . . will need to be addressed during foundation design review."

- Serke destroyed the file she maintained when she designed the home's foundation, did not possess copy of "any soils reports" related to the property, and could not identify which Engeo soil reports she received regarding the property. Serke averred "Wright did not inform [her] that differential fill was present" on the property and stated she was "unaware that differential fill was present at [the property]" when she designed the home's foundation.

- Wright knew the property had been "cut" and "graded" but not to "what extent." Wright was aware the property "wasn't in a natural state. . . . whether it was cut down to get there or it was brought back up" but he "just never paid attention." He knew there was fill in the lots in the subdivision, but not the depth of the fill because another Shapell department "dealt with" that issue.

B.  Shapell's Accrual Defense

Shapell also argued it was entitled to summary judgment because Dr. Laux — not plaintiff — was "the true owner of any cause of action" against Shapell and had not assigned his claims to plaintiff. As Shapell explained, plaintiff alleged "that within the first two months of her ownership she observed problems and began investigating the cause of the related damages. [Dr.] Laux owned the . . . Property for well over three years, saw many of the same if not identical defects as observed by Plaintiff, took multiple corrective measures to repair or patch the visible damage, yet he never once took steps to investigate or attempt to identify what was the [sic] causing the damage. . . . [Dr.] Laux was therefore on 'inquiry notice' as to what was causing the damage to the property, . . . Once on 'inquiry notice' . . . the action lies with that homeowner and in this case it was [Dr.] Laux." In support of the motion, Shapell relied on warranty requests submitted by Dr. Laux which — according to Shapell — "placed [Dr.] Laux on 'inquiry' notice" and "mirrored" the defects about which plaintiff complained.

In opposition, plaintiff argued her claims against Shapell accrued when she owned the property and the "question of when a claim has accrued is almost always one of fact."

6

Plaintiff contended Dr. Laux's "minor warranty requests" did not concern soil movement and he "did not have reason to suspect the cause of his damage was the presence of deep differential fill, highly expansive soils, lack of drainage or inadequate foundation design. Thus, Dr. Laux was not on inquiry notice and the cause of action did not accrue during his ownership." According to plaintiff, "dramatic changes and damages" occurred on the property after she purchased it. When she investigated, she learned the damage was caused by "soils movement and inadequate foundation design. Thus, the cause[s] of action against Shapell accrued during [her] ownership and she ha[d] standing" to sue. Plaintiff offered the following evidence in opposition:

- Her declaration describing the "significant changes [that] occurred in the condition of the property" after she moved into the home. Before plaintiff purchased the home, she "caused a home inspection, roof inspection, chimney inspection and pool inspection to be performed at the Property. [She] also personally observed the visible conditions of the Property. Other than two small hairline cracks, [she] did not observe any problems or defects in the property prior to [her] purchase." After she moved into the house: (1) a hairline crack in the pool decking became a fracture, other cracks surfaced, and the coping at the pool buckled and separated; (2) standing water appeared on the property and began to roll toward the house; (3) cracks appeared in exterior tiles and in drywall; (4) window seals broke and windows separated from their frames; (5) a hairline crack in the stucco "substantially increased" and additional cracks appeared; (6) doors stopped closing and locking and a sliding glass door cracked and started "to seize[;]" and (7) an iron fence separated. "These conditions were not present" when plaintiff purchased the home.

- Dr. Laux did not believe there was a problem with the foundation or soil conditions when he purchased the home from Wright and his wife. He did not know there was up to 20 feet of fill soil under the foundation of the house. While Dr. Laux owned the home, he submitted warranty requests for "punch list" or "minor" problems with the home "'that were not perfect, less than perfect'" but he never thought there was an underlying soil or foundation condition causing the problems. Dr. Laux did not think

7

he needed to hire experts to investigate the problems on the property.  He gave plaintiff a $2,000 credit against the sale of the home for minor repairs, not because of a perceived deficiency in the condition of the soil or foundation.  Dr. Laux was sincere when he wrote plaintiff a letter expressing his love for the home.

C.     The Court's Order

Following a hearing, the court granted Shapell's motion for summary adjudication on plaintiff's fraudulent concealment claim, concluding plaintiff "failed to present evidence of Shapell's concealment of information sufficient to show a triable issue of material fact[.]"

The court denied the motion as to plaintiff's strict liability and negligence causes of action, concluding there was a triable issue of material fact regarding whether plaintiff "own[ed] any claims regarding defects in the design and construction of the home."  As the court explained, "Shapell asserts, there is no . . . triable issue of material fact as to whether accrual occurred after [plaintiff] bought the home: it was possibly during the time of Wright's ownership but certainly no later than when Dr. Laux owned the home. . . . [¶] Shapell notes that the inspection report prepared for Dr. Laux before he purchased the home noted cracking in walkways, patios and exterior walls, as well as stating that due to the nature of the soil some concrete movement would occur. . . .  Throughout the time he owned the home, Dr. Laux sought warranty repairs to address multiple problems with door adjustments, interior and exterior cracking of walls, cracked tiles and other issues. . . .  Shapell argues that the problems known to Dr. Laux were similar to, and as significant as, those complained of by [plaintiff], and were enough to give Dr. Laux notice that he should look further into the cause of the damages."

The court noted plaintiff presented "evidence to dispute Shapell's characterization of the problems noted in the inspection report prepared for Dr. Laux and those problems for which he sought repairs as 'mirroring' the defects she alleges.  She notes, for example, that the inspection report prepared for Dr. Laux called the cracks in the walkways and patios, and in walls 'acceptable.'. . .  By contrast, although when she moved in there was only minor cracking in exterior flatwork, stucco and interior drywall,

8

[plaintiff] alleges and presents evidence of far more significant cracking after her purchase of the home. As to other defects as well, [plaintiff] similarly either points to the evidence relied upon by Shapell or presents other evidence to dispute Shapell's characterization of the types of problems experienced by Dr. Laux as significant enough so that he should have investigated into the cause." The court determined the evidence "pointed to by [plaintiff] — including some of the evidence submitted by Shapell in support of its motion — [was] enough to show the existence of a triable issue of material fact" regarding when plaintiff's claims accrued and whether plaintiff owned the strict liability and negligence claims.

### *Bench Trial and Judgment for Shapell*

Over plaintiff's objection, the court granted Shapell's motion to bifurcate its accrual and statute of limitations defenses. Shapell then requested a bench trial on accrual, claiming it was "a legal issue" for the court — not the jury — to determine. As Shapell explained, the "issue of the party which owned the property at the time the work was performed or when the damage occurred and whether any rights were transferred or assigned . . . are questions of law for the court to determine." Shapell also argued a bench trial on the threshold and dispositive issue of accrual would promote judicial economy.

In opposition, plaintiff claimed she was entitled to a jury trial because "[t]he question of when a claim accrued is one of fact" and "[t]here is substantial and significant evidence for the jury to determine the cause of action against Shapell accrued during [her] ownership[.]" Plaintiff claimed a jury should determine whether she owned the causes of action against Shapell because the parties disputed the "predicate facts underlying that determination." According to plaintiff, the "determination of standing depends upon a weighing of the evidence of whether or not there was appreciable economic injury to the prior owner that would have triggered the accrual of a cause of action . . . or at least accrual of the inquiry period for a cause of action and, therefore, giving rise to the question of standing."

9

After reviewing the parties' extensive briefing and holding several hearings, the court decided to conduct a bench trial on whether plaintiff had "standing to sue . . . Shapell for defective construction, i.e. whether or not the cause of action accrued during the time the property was owned by Dr. Marcus Laux." Following a nine-day bench trial, the court entered judgment for Shapell. The court concluded the claims asserted in plaintiff's lawsuit "accrued to Dr. Laux" because it was "undisputed that physical manifestation of problems occurred and existed during ownership of the property by Dr. Laux (between 2004 and 2008)." In addition, the court determined the "[d]amages to the property complained of by Plaintiff were similar and some identical to (but not fundamentally different from) those complained of by Dr. Laux." The court concluded plaintiff had "no standing to sue" because the "items of damage" claimed by plaintiff "represent damages which belonged to Dr. Laux and he elected not to pursue them."

## DISCUSSION

Plaintiff challenges the court's grant of summary adjudication on her fraudulent concealment claim and its resolution of the accrual issue without a jury trial.

### I.
### *The Court Erred by Granting Summary Adjudication on Plaintiff's Fraudulent Concealment Claim*

"Concealment is a species of fraud or deceit. [Citations.] '[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.' [Citations.]" (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 868.)

"'"A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law.

10

[Citation.] The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish,"' the elements of his or her cause of action. [Citation.]" [Citation.] We review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.' [Citation.]" (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705 (*Ennabe*); see also *Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th 1395, 1402.)

Plaintiff's fraudulent concealment claim alleged Shapell failed to disclose information about the property's soil conditions to Shaer-K, who designed the home's foundation. Plaintiff also alleged Shapell concealed information about the soil conditions to the original buyer, Wright. In the trial court and on appeal, the parties focus on the first element: whether Shapell concealed or suppressed a material fact. Plaintiff contends the court erred by granting summary adjudication on her fraudulent concealment claim because Shapell offered "no evidence conclusively showing that Shapell, or Wright acting for Shapell" provided Serke or Shaer-K with Engeo's 1992 or 1999 reports and because Shapell offered "no evidence conclusively showing that Wright was made aware of the soil concerns and recommendations identified in Engeo's September 3, 1992, report[.]"

Shapell argues it was entitled to summary adjudication on plaintiff's fraudulent concealment claim because it made a "prima facie showing that nothing had been concealed." In support of its motion, Shapell offered evidence that: (1) Wright knew the property contained fill, had been graded, and was not "in a natural state" when construction on the home began; (2) Wright provided Serke with whatever information she requested when she designed the home's foundation, including an Engeo "soils sheet[;]" (3) Serke received unspecified Engeo "soils reports" for the project and used them to design the home's foundation; (4) before plaintiff purchased the home, she received disclosure forms advising her the property "may be constructed on fill or improperly compacted soil[,]" which "can cause structural problems[;]" and (5) before she purchased the home, plaintiff also received a 2004 professional real estate inspection

11

report stating the home was "located in an area where the soil condition is of an expansive nature . . . some building and site concrete movement will always occur as the soil moisture content changes from season to season. The method of construction used when this structure was built seems to have the inherent characteristic of slight structural movement."

In opposition, plaintiff offered evidence that: (1) Serke could not recall which Engeo reports she received when she designed the home's foundation; (2) Wright did not inform Serke "differential fill was present" on the property; (3) Serke "was unaware that differential fill was present" on the property when she designed the home's foundation; (4) Wright probably did not look at the Engeo reports and when asked whether he gave Serke anything in addition to the building plans, he stated, "I don't believe I did[;]" (5) Wright did not know the depth of the fill soil on the property because he "just never paid attention" and because another Shapell department "dealt with" that issue; (6) when asked whether he confirmed the amount of depth of the fill on the property, Wright stated, "I have no clue. . . . I don't know what . . . is fill, what's not, what depths or anything[;]" (7) Shapell did not provide Wright with statutory disclosures when he purchased the home; and (8) when he sold the home to Dr. Laux, Wright stated in the real estate transfer disclosure statement he was unaware of the presence of fill on the property.

We are required to view the evidence and reasonable inferences in the light most favorable to plaintiff. (*Ennabe, supra,* 58 Cal.4th at p. 705.) Applying this standard, plaintiff's evidence persuades us there is a triable issue of material fact regarding whether Shapell concealed material information about the property's soil conditions from Serke and Wright. The evidence plaintiff offered in opposition to the motion demonstrates Wright did not pay attention to the property's soil condition when the house was being constructed and did not know what soil was "fill, what's not, what depths or anything." Additionally, Wright did not inform Serke "differential fill was present" on the property and was not sure what information he gave Serke when she designed the home's foundation. For her part, Serke could not say which reports she received and "was

12

unaware that differential fill was present" when she designed the foundation for the home. Finally, Wright stated he was unaware of the presence of fill on the property when he sold the home to Dr. Laux. In light of this evidence, we conclude the court erred by granting Shapell's motion for adjudication on plaintiff's fraudulent concealment claim.

## II.
### *A Jury Must Determine Disputed Facts Underlying the Determination of Whether the Construction Defect Causes of Action Accrued to Plaintiff*

Plaintiff contends she was entitled to have a jury resolve factual disputes pertaining to "when and to whom the causes of action accrued." We review de novo the court's ruling denying plaintiff a jury trial on the issue of accrual. (*Villano v. Waterman Convalescent Hospital, Inc.* (2010) 181 Cal.App.4th 1189, 1205; see also *IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299.)

"Civil litigants in California are guaranteed the right to trial by jury by California Constitution, article 1, section 16[.]" (*Windsor Square Homeowners Assn. v. Citation Homes* (1997) 54 Cal.App.4th 547, 550 (*Windsor Square*).)[3] This "right extends to factual questions only; issues of law are triable by the court." (*Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1328 & fn. 6 (*Alpert*); Code Civ. Proc., § 591 ["[a]n issue of law must be tried by the court"]; Evid. Code, § 310 [court decides questions of law, and the determination of issues of fact preliminary to the admission of evidence].) Put another way, "[t]he right to a trial by jury is a right to have the jury try and determine *issues of fact*." (7 Witkin, Cal. Procedure (5th ed. 2008) Trial, § 81, p. 107.) "The right to trial by jury is a basic and fundamental part of our system of jurisprudence and should be zealously guarded[.]" (*Plascencia, supra,* 103 Cal.App.4th at p. 428.) At least one court has expressed a "healthy skepticism of removing factual questions from juries[.]" (*Alpert, supra,* 81 Cal.App.4th at p. 1328.)

---

[3] "Th[is] guaranty extends to all cases which were triable to a jury at common law when California adopted its first Constitution in 1850." (*Windsor Square*, *supra*, 54 Cal.App.4th at p. 550.) Plaintiff contends her case is "an action at law and is encompassed by the constitutional jury guaranty." (*Id*. at p. 551.) Shapell does argue otherwise.

As we have stated, "'standing'" in the construction defect context refers to "when a cause of action for design or construction defects accrues and who then owns it [ ] or . . . who doesn't own it." (*Krusi, supra,* 81 Cal.App.4th at p. 999, italics omitted.) "A cause of action for damage to real property accrues when the defendant's act causes "'*immediate* and *permanent* injury'" to the property or . . . when there is '[a]ctual and appreciable harm' to the property." (*Id.* at p. 1005; see also *Keru Investments, Inc. v. Cube Co.* (1998) 63 Cal.App.4th 1412, 1423 (*Keru*).) In the construction defect context, the issue of to whom "a cause of action accrues is a question of fact." (*Krusi, supra*, 81 Cal.App.4th at p. 1006.)[4]

A trial court may decide whether a plaintiff has standing to sue for negligent design, engineering, or construction of a building — i.e., whether the cause of action accrues to that plaintiff — where the facts underlying that determination are undisputed. (*Krusi, supra,* 81 Cal.App.4th at pp. 1006-1008 [summary judgment proper where there was no triable issue of material fact regarding accrual of construction defect causes of action]; *Vaughn v. Dame Construction Co.* (1990) 223 Cal.App.3d 144, 146-147 [facts underlying standing to sue for defective construction were undisputed]; *Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 52 [court held bifurcated bench trial where plaintiffs' standing to sue for latent construction defects was "based on undisputed facts"]; see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 2:78.5, p. 2-28.4 (Rutter).)

But where the determination of whether causes of action for negligent design, engineering, or construction of a building accrue to the plaintiff depends on disputed facts or require credibility determines, the jury must make the factual findings on the issue. We find support for our conclusion in *Jefferson v. County of Kern* (2002) 98 Cal.App.4th

---

[4]     We rely on *Krusi* only for the limited proposition that to whom a cause of action accrues is a question of fact. (*Krusi, supra,* 63 Cal.App.4th at p. 1006.) We have no occasion to comment on questions other courts have raised about whether certain language in *Krusi* "may be imprecise or overbroad." (*Standard Fire Ins. Co. v. Spectrum Community Assn.* (2006) 141 Cal.App.4th 1117, 1144; see also *Jasmine Networks, Inc. v. Superior Court* (2009) 180 Cal.App.4th 980, 994-995 (*Jasmine*).)

14

606 (*Jefferson*), a case not cited by either party.  In *Jefferson*, the plaintiff sued a county and a physician for malpractice and fraud.  The trial court denied the plaintiff's motion for a jury determination of the dates of accrual of his causes of action.  In a bifurcated bench trial, the court determined the plaintiff's causes of action were barred because they accrued more than one year before his application for leave to present a late claim to the county under Government Code section 946.6.  (*Jefferson*, at p. 609.)  The plaintiff appealed, contending he was entitled to "a jury trial . . . on the issue of the dates of accrual of his causes of action."  (*Id.* at p. 610, fn. omitted.)

Although the *Jefferson* court determined there was no right to a jury trial under Government Code section 946.6, the court concluded plaintiff "was entitled to a jury trial on the issue of the date of accrual of his causes of action" for statute of limitations purposes.  (*Jefferson, supra*, 98 Cal.App.4th at pp. 609, 614.)  The court explained, "[t]he determination about when a cause of action has accrued for purposes of" the statute of limitations "is a proper subject for a jury when the facts are in dispute" and observed, "a medical malpractice plaintiff has the right to a jury trial on factual issues relevant to the defense, among others, of the date of accrual for purposes of the statute of limitations." (*Id*. at pp. 615, 619.)  Although standing in the construction defect is distinct from a statute of limitations defense, the concepts are similar in that they both concern the accrual of a claim, a factual issue.[5]  (See *Keru, supra,* 63 Cal.App.4th at p. 1423.)  Here as in *Jefferson*, plaintiff has the right to a jury trial on disputed issues of fact regarding

---

[5]    Shapell contends the court correctly determined "the legal issue of 'standing' without a jury" because "[s]tanding to sue is a threshold, jurisdictional issue." Characterizing the issue as a threshold jurisdictional issue does not assist Shapell.  (See *Jasmine, supra,* 180 Cal.App.4th at p. 993.)  As we have explained, where a party's "standing" to sue for construction defect depends on disputed facts or credibility determinations, the parties are entitled to a jury trial on the issue.  (Rutter, *supra,* 2:78.5, p. 2-28.4; see also *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 877 [controverted factual issues underlying a question of law "must be passed upon by the jury" before the court can resolve the legal issue]; *Plascencia, supra,* 103 Cal.App.4th at p. 414 [jury must determine factual disputes underlying the court's resolution of a threshold legal issue].)

15

when her causes of action accrued, such as whether and when there was actual and appreciable harm to her property. (*Jefferson, supra,* 98 Cal.App.4th at p. 619.)

Citing *People v. Betts* (2005) 34 Cal.4th 1039, 1054 (*Betts*), Shapell argues courts frequently determine disputed factual issues before resolving a "dispositive procedural issue in the case." In *Betts*, our high court concluded a defendant does not have a right to a jury trial on disputed facts establishing the existence or absence of territorial jurisdiction in a criminal proceeding. (*Id.* at pp. 1044, 1047, 1054.) The *Betts* court "observed that 'although questions of fact relating to the substantive issue of guilt or innocence are within the province of the jury, questions of law concerning procedural issues that do not themselves determine guilt or innocence—including any underlying questions of fact—are within the province of the court.' [Citation.]" (*Id*. at p. 1048.) The court then concluded "[b]ecause territorial jurisdiction is a procedural matter that relates to the authority of California courts to adjudicate the case and not to the guilt of the accused or the limit of authorized punishment, a jury trial on the factual questions that establish jurisdiction is not required by the federal Constitution." (*Id.* at p. 1054, fn. omitted.)

*Betts* does not assist Shapell. *Betts* considered a procedural question: whether California courts have authority to hold a person criminally liable. (*Betts, supra,* 34 Cal.4th at p. 1054.) As the *Betts* court emphasized, the factual issue of the existence or absence of territorial jurisdiction is unrelated to the substantive issues of guilt or innocence of crimes charged, or the truth of facts that increase punishment. As to those substantive issues, the accused is entitled to a jury trial. (*Ibid.,* citing *Blakely v. Washington* (2004) 542 U.S. 296 and *Apprendi v. New Jersey* (2000) 530 U.S. 466.) Here, unlike the threshold issue of territorial jurisdiction in *Betts*, the issue of whether certain defects and consequential damages manifested themselves during Dr. Laux's ownership are related to — and may well be the same as — substantive issues the jury will be asked to decide when it considers whether plaintiff has proven her claims of defective design and construction of her home or fraudulent concealment of the alleged defects. Here the court's decision on these factual issues turned in part on credibility

16

determinations. The same factual issues of whether certain causes of action accrued to plaintiff or to a prior owner are central to the substantive merits of plaintiff's tort claims.

Shapell's reliance on *Windsor Square* does not alter our conclusion. There, the appellate court held facts underlying a res judicata defense are tried to the court. (*Windsor Square*, *supra*, 54 Cal.App.4th at p. 557.) *Windsor Square* explained, "[t]he rule that the facts underlying the applicability of the res judicata defense are tried to the court, and not to a jury, although it is a legal and not an equitable defense, is well settled. One reason that such factual issues are tried to the court seems apparent. The issues are often mixed fact-law determinations, involving, for instance, the assertion of jurisdiction, a decision better made by the court alone. Ordinarily, the facts that need to be determined are fairly simple—for example, what the complaint alleges in the first action versus what the complaint alleges in the second action. The pleadings must be studied to determine what claims were or could have been raised, who were the parties sued, whether the party against whom the bar is asserted was in privity with a party to the prior suit, whether the prior adjudication was a judgment on the merits. While all these issues may have factual predicates, they are peculiarly legal determinations." (*Ibid.*)

*Windsor Square* is distinguishable. That case "did not involve a disputed issue of fact based upon conflicting evidence but rather a disputed issue of law based upon undisputed facts—in other words, a legal issue of the sort which is traditionally the peculiar province of the court." (*Jefferson, supra,* 98 Cal.App.4th at p. 619.) Here and in contrast to *Windsor Square*, "the facts that need to be determined" to assess whether the causes of action accrue to plaintiff are not "peculiarly legal determinations." (*Windsor Square, supra,* 54 Cal.App.4th at p. 557; *Krusi, supra,* 81 Cal.App.4th at p. 1006; see *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 67 [distinguishing *Windsor Square* on same grounds with respect to design defense immunity].) Nor are the facts relevant to the accrual "fairly simple[.]" (*Windsor Square, supra,* 54 Cal.App.4th at p. 557.) The court conducted a nine-day bench trial to evaluate whether there was actual and appreciable harm to the property while Dr. Laux owned it.

17

When the determination of accrual in the construction defect context turns on disputed facts or requires credibility determinations, the jury must make factual findings as to whom the cause of action accrued.  While allowing a trial court to resolve disputed factual issues underlying accrual may promote judicial economy, "concerns about administrative efficiency and judicial economy cannot" — in this situation — "overcome a [plaintiff's] right to a jury trial." (*Plascencia, supra,* 103 Cal.App.4th at p. 430.)  Our holding does not prevent a defendant from bringing a motion for summary judgment to challenge a plaintiff's standing to sue in a construction defect case; such a motion will properly be granted where there is no triable issue of material fact as "to whom [ ] a cause of action accrue[d]." (See *Krusi, supra,* 81 Cal.App.4th at p. 1006.)

Having reached this result, we need not address the parties' other claims.  We express no opinion as to whom the causes of action in this case accrued.  (See *Jefferson, supra,* 98 Cal.App.4th at p. 611.)

## DISPOSITION

The order granting summary adjudication for Shapell on plaintiff's fraudulent concealment cause of action is reversed.  The judgment for Shapell is also reversed.  Plaintiff shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.

18

A139385

Superior Court of the County of Contra Costa, No. MSC10-00598, Judith S. Craddick, Judge.

McGuire Coats LLP, Wendy McGuire Coats for Plaintiff and Appellant.

Horvitz & Levy LLP, H. Thomas Watson and Daniel J. Gonzalez; Lorber, Greenfield & Polito LLP, Joyia Z. Greenfield, Lisa M. Cappelluti and Adam M. Stoddard for Defendant and Respondent.