Filed 9/29/23  Hancock v. City and County of San Francisco CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARY HANCOCK,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant and Respondent. | A165609<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-20-584395) |

Plaintiff and appellant Mary Hancock tripped over a tree grate on a sidewalk and fell, injuring herself.  The two halves of the grate were not aligned, resulting in a height differential of approximately one inch.  Hancock sued defendant and respondent City and County of San Francisco (City), the owner of the grate, for a dangerous condition of property.  The trial court granted summary judgment for the City, finding that the defect in the tree grate was trivial as a matter of law.  Hancock contends the court erred in doing so.  We disagree and affirm.

**BACKGROUND**

Between 4:00 p.m. and 5:00 p.m. on October 17, 2019, Hancock was walking northbound on the sidewalk of Van Ness Avenue in the City, an area subject to "heavy pedestrian use."  At that time of day, it was "sufficiently

1

light out . . . to see the sidewalk."  Hancock was also familiar with the area and walked on that particular sidewalk "every once in a while."

Near 1901 Van Ness Avenue, Hancock tripped on a tree grate and fell. The grate was made of gray, cast iron and consisted of "two 2-foot by 4-foot halves."  At the location where Hancock tripped, one half of the grate was approximately one inch higher than the adjoining half (uplift).  A person walking with a normal gait would hit that uplift with her toe.  The two halves, however, were not broken and had no jagged or irregular edges. There was also no debris obscuring the grate, but the two halves were not bolted together.

Hancock was not aware of the uplift and did not notice the tree grate or uplift before she tripped.  She had also never seen anybody trip on the grate before.  Meanwhile, the City had received no complaints, reports of injury, inspection requests, or claims relating to the grate that Hancock tripped over. A City inspector, however, inspected that grate in 2015 as part of a transit project and recommended its removal.  Recommendations to remove a tree grate may be made for the "health of the tree" or to remove a tripping hazard, but the inspector gave no reason for the recommendation.[1]

Order No. 178,631 issued by the City's Department of Public Works states that "tree grates . . . are discouraged" because, "over time, they can become a tripping hazard and can interfere with the growth of the tree." Consistent with this Order, the City would remove a tree grate "if a tree grate uplift was observed and then found to be above one half of an inch." This is because an uplift greater than one half inch presents a "tripping hazard."

---

[1] The City removed the tree grate that Hancock tripped over "sometime between November 2019 and March 2020."

Hancock sued the City, the owner of the tree grate, alleging a single cause of action for dangerous condition of public property. The City moved for summary judgment. The trial court granted the City's motion, finding that "the totality of the circumstances show the alleged defect [Hancock] encountered was trivial as a matter of law." In support, the court relied on the following undisputed facts: "(1) the condition was about 1-inch, (2) [Hancock] had been to the site of the condition before, (3) there was no debris covering the tree grate when [Hancock] encountered it, (4) the grate did not have jagged edges or other evidence it was broken when [Hancock] encountered it, and (5) there is no evidence that the condition caused other accidents or injuries." The court entered judgment for the City, and Hancock timely appealed.

## STANDARD OF REVIEW

" ' " ' "A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. [Citations.] The moving party bears the burden of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish,' " the elements of his or her cause of action. [Citation.]' [Citation.] We review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." ' " (*Stofer v. Shapell Industries, Inc.* (2015) 233 Cal.App.4th 176, 186.)

## DISCUSSION

Hancock contends the trial court erred in concluding that the one-inch uplift in the tree grate that she tripped over was a trivial defect as a matter of law. We disagree.

Under Government Code section 835,[2] a public entity may be held "liable for injury caused by a dangerous condition of its property . . . ." Under section 830, subdivision (a), a " '[d]angerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." But a "condition is not a dangerous condition . . . if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (§ 830.2; see also *Stack v. City of Lemoore* (2023) 91 Cal.App.5th 102, 110 (*Stack*) [" 'The existence of a dangerous condition is ordinarily a question of fact . . . but it can be decided as a matter of law if reasonable minds can come to only one conclusion' "].)

"Thus, 'a property owner is not liable for damages caused by a minor, trivial, or insignificant defect' on its property. [Citation.] This principle, referred to as the 'trivial defect doctrine' or the ' "trivial defect defense" ' is not an affirmative defense, but 'an aspect of duty that a plaintiff must plead and prove.' [Citation.] That is so because a property owner's duty of care 'does not require the repair of minor or trivial defects.' " (*Nunez v. City of Redondo Beach* (2022) 81 Cal.App.5th 749, 757 (*Nunez*).) Indeed, the defense "provides a check valve for the elimination from the court system of unwarranted litigation which attempts to impose upon a property owner

---

[2] All further statutory references are to the Government Code.

what amounts to absolute liability for injury to persons who come upon the property." (*Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 399.)

In determining whether a property defect is trivial as a matter of law, most courts of appeal have applied a two-step analysis. "First, the court reviews evidence regarding the type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors such as the weather, lighting and visibility conditions at the time of the accident, the existence of debris or obstructions, and plaintiff's knowledge of the area. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law and grant judgment for the landowner." (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 567–568 (*Stathoulis*); see *Nunez, supra*, 81 Cal.App.5th at p. 758 [applying *Stathoulis's* two-step analysis]; *Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1105 (*Huckey*) [same].)

One court of appeal, however, has recently rejected this two-step framework in favor of "a holistic multi-factor framework for assessing triviality." (*Stack, supra*, 91 Cal.App.5th at p. 114.) Under this holistic framework, "the size of the defect is but one of the many circumstances to be considered; however, size remains the ' "most important" ' of the dangerous condition factors." (*Ibid.*)

Here, the undisputed facts establish that the uplift in the tree grate that Hancock tripped over was a trivial defect that did not create a dangerous condition under either the two-step or holistic framework.

First, the size of the defect suggests it is trivial. Both parties agree that the uplift was approximately one inch. At least two courts of appeal have stated that uplifts in a sidewalk up to "one and one-half inches have

5

generally been held trivial as a matter of law." (*Huckey*, *supra*, 37 Cal.App.5th at p. 1107; see *Stathoulis*, *supra*, 164 Cal.App.4th at p. 568 ["Several decisions have found height differentials of up to one and one-half inches trivial as a matter of law"].) This appears to comport with cases absolving property owners of liability for uplifts greater than one inch. (See, e.g., *Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361, 367 (*Nicholson*) [1.5 inches]; *Huckey*, at p. 1110 [1.21875 inches]; *Beck v. City of Palo Alto* (1957) 150 Cal.App.2d 39, 43–44 [1.875 inches]; *Meyer v. City of San Rafael* (1937) 22 Cal.App.2d 46, 47 (*Meyer*) ["an inch and three-eighths"].)[3] But one court of appeal recently concluded that "*Huckey* and *Stathoulis* exaggerate[d] the generally accepted size range of defects deemed trivial." (*Stack*, *supra*, 91 Cal.App.5th at p. 112.) Despite this apparent disagreement, *Stathoulis*, *Huckey*, and *Stack* all agree that a one-inch uplift may be deemed trivial. (*Stack*, at p. 112; see *Balmer v. City of Beverly Hills* (1937) 22 Cal.App.2d 529, 530, 531 (*Balmer*) [one-inch differential between old and new sidewalk is "minor defect"]; *Dunn v. Wagner* (1937) 22 Cal.App.2d 51, 53, 54 (*Dunn*) [one-inch "drop between the two sidewalks" is "trivial"].) Indeed, California courts have only been "reluctant to find that the defect is not dangerous as a matter

---

[3] Hancock argues that *Huckey* should be disregarded because it relied on *Barrett v. City of Claremont* (1953) 41 Cal.2d 70 (*Barrett*) to support its conclusion that uplifts over one inch have been deemed trivial. (See *Huckey*, *supra*, 37 Cal.App.4th at p. 1107.) According to Hancock, *Barrett* mistakenly relied upon *Nicholson* and *Meyer* in reaching this conclusion because those two cases only addressed whether the defendant had notice of the defect, and not whether the defect was trivial. Hancock is correct that *Nicholson* and *Meyer* are notice cases. But she ignores our high court's observation in *Barrett* that a "determination of whether the defect involved is a minor or trivial one may be material to the establishment of" notice. (*Id.* at p. 73.) This is presumably why the high court cited *Nicholson* and *Meyer* for the proposition that uplifts greater than one inch may be "minor ones." (*Barrett*, at p. 74.)

6

of law" when the uplift "begins to stretch beyond one inch." (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 726 (*Fielder*).) Thus, the size of the uplift supports a finding of no dangerous condition.

Second, all other relevant factors confirm that the one-inch uplift in the tree grate that Hancock tripped over is trivial as matter of law. The lighting was good at the time she tripped, and there was no debris obscuring the grate's visibility. The grate consisted of two unbroken halves with no jagged or irregular edges.[4] Thus, the nonalignment of those two halves was the only tripping hazard. (See *Stack*, *supra*, 91 Cal.App.5th at p. 115 [" 'mere nonalignment of two horizontal [sidewalk] slabs' " supported finding of a trivial defect].) There had been no reported accidents or injuries involving the grate even though the area where the grate was located was heavily used by pedestrians. Under these undisputed facts, the uplift that Hancock tripped over is not, as a matter of law, a dangerous condition. (See *Huckey*, *supra*, 37 Cal.App.5th at pp. 1108–1110 [differential in sidewalk height of

---

[4] Hancock does not dispute that the two halves of the tree grate were unbroken and that there were no irregular edges. She nonetheless claims that the uplift was "jagged" for purposes of establishing a dangerous condition because it created an abrupt change in elevation. She, however, cites nothing to support this claim. This is not surprising. If any abrupt change in elevation is considered jagged for purposes of establishing a dangerous condition, then summary judgment would never be granted in a sidewalk uplift case. In any event, an irregular edge, as a matter of commonsense, poses a greater risk to pedestrians than a smooth and regular edge because an irregular edge is harder to avoid and because shoes or clothing are more likely to get snagged on an irregular edge.

Hancock also claims that the tree grate was "broken" because its two halves were not bolted. But she does not explain how the failure to bolt those two halves together created a greater risk of injury. To the extent bolting would have reduced the risk of injury by limiting the size of the uplift or by making the uplift less abrupt or more visible, it has no bearing on whether the actual uplift that Hancock tripped over was a dangerous condition.

7

1.21875 inches is trivial because there "were no broken concrete pieces or jagged concrete edges," there was "no evidence that the City had ever been notified of any trip and fall accidents, other than plaintiff's claim, on or near the area of the height differential," and there was no evidence that the plaintiff had "a difficult time seeing the height differential" due to debris or lighting].)

Hancock's arguments to the contrary are unavailing. For example, the City's policy of removing a tree grate with an uplift of one-half inch or greater and the recommendation of a City inspector to remove the grate that Hancock tripped over, even if it was due to the tripping hazard, does not create a triable issue of fact. That an uplift greater than one-half inch is a tripping hazard does not mean that it creates "a substantial risk of injury" as understood in section 830.2. Thus, neither the City's policy nor the inspector's recommendation establishes a duty under sections 830 and 835 to eliminate the tripping hazard posed by the uplift in this case. (See *Nunez*, *supra*, 81 Cal.App.5th at p. 759 ["the [c]ity does not have a duty to protect pedestrians from every sidewalk defect that might pose a tripping hazard— only those defects that create a *substantial* risk of injury to a pedestrian using reasonable care," italics in original].) As explained in *Nunez*, at page 758—which rejected this very same argument made by Hancock—" '[i]t is impossible to maintain heavily traveled surfaces in perfect condition. Minor defects such as the [uplift] in [the tree grate] inevitably occur, and the continued existence of such [uplifts] without warning or repair is not unreasonable.' " (Quoting *Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 929.) In any event, "only the legislature can create public entity liability." (*Nunez*, at p. 758.) Finally, holding that the City's policy transforms every uplift of one-half inch or greater into a dangerous condition would discourage

the City and other property owners from eliminating tripping hazards that do *not* create a substantial risk of injury—perversely rendering their properties less safe.

Similarly, the 2004 Americans with Disabilities Act Guidelines (ADAAG), the American Society for Testing and Materials (ASTM) standards, and the California Uniform Building Code (UBC) do not support Hancock's position.  First, the City's failure to comply with ADAAG merely establishes a "barrier to access" for disabled individuals.  (*Skaff v. Rio Nido Roadhouse* (2020) 55 Cal.App.5th 522, 534.)  It does not establish a dangerous condition for purposes of sections 830 and 835.  Second, the ASTM standards—which are voluntary and have not been adopted by the Legislature—cannot overrule the many cases over the past century holding that one-inch uplifts may be trivial defects that do not give rise to liability.  (See, e.g., *Stack*, *supra*, 91 Cal.App.5th at p. 112; *Huckey*, *supra*, 37 Cal.App.5th at p. 1107; *Stathoulis*, *supra*, 164 Cal.App.4th at p. 568; *Fielder*, *supra*, 71 Cal.App.3d at p. 726; *Balmer*, *supra*, 22 Cal.App.2d at pp. 530, 531; *Dunn*, *supra*, 22 Cal.App.2d at pp. 53, 54.)  Third, Hancock concedes that the UBC does not apply to tree grates.

The continuity in color between the two halves of the tree grate that Hancock tripped over also does not help her.  Most, if not all, sidewalk offsets lack any color differentiation because sidewalk slabs are usually, if not always, the same color.  If color continuity transformed an otherwise trivial defect into a dangerous condition, then the trivial defect defense would not apply to public sidewalks.  This is obviously not so.  (See, *supra*, at pp. 5–6.)

Finally, the cases cited by Hancock are distinguishable.  Each of those cases involved factors other than the size of the defect in the sidewalk or road

9

that rendered that defect a dangerous condition under sections 830 and 835.[5] None of those factors are present here.

Accordingly, the trial court did not err in finding that the one-inch uplift in the tree grate that Hancock tripped over was a trivial defect as a matter of law.  Because we affirm solely on this ground, we do not address the other arguments raised by the City.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to the City.  (Cal. Rules of Court, rule 8.278(a).)

---

[5] (See *Stathoulis*, *supra*, 164 Cal.App.4th at pp. 568–569 [finding a dangerous condition because the defect consisted of "three, irregularly shaped and sizeable holes of about an inch deep flanking one another in the street" and because the plaintiff "had never before visited" that street]; *Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 29 [finding a dangerous condition because the recessed drains in the walkway could not be " 'easily detected even in daylight' "]; *Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, 269, 270 [finding a dangerous condition because the rebar protruding from the tire stop was obscured by parked vehicles and hard to detect and was located in an area posing a greater danger to pedestrians than a sidewalk]; *Barone v. City of San Jose* (1978) 79 Cal.App.3d 284, 291 [finding a dangerous condition because the break in the sidewalk was "irregular and jagged" and because the defendant presented no evidence "concerning the existence of records of prior accidents"]; *Rodriguez v. City of Los Angeles* (1963) 215 Cal.App.2d 463, 468 [finding a dangerous condition because "there had been at least four prior accidents at the particular location where [the] plaintiff tripped and fell"].)

_____
CHOU, J.

We concur.



_____
JACKSON, P. J.




_____
BURNS, J.






*Hancock v. City & County of San Francisco* / A165609

11