Filed 2/14/24  P. v. Cokley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096453 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE006388) |
| v. | |
| JOHNNIE LEE COKLEY, | |
| Defendant and Appellant. | |

Defendant Johnnie Lee Cokley appeals from his conviction for, among other charges, human trafficking, pimping, and pandering, which were charged as continuous courses of conduct occurring over an extended period of time and including conduct occurring partially in California and partially in other states.  As to those counts, the information alleged enhancements for infliction of great bodily injury under

1

circumstances involving domestic violence.  (Pen. Code, § 12022.7, subd. (e).)[1]  At trial, the prosecution confirmed that the great bodily injury allegations were based solely on an injury defendant inflicted on the victim in Arizona.  The jury found the allegations true as to each count relevant here.

On appeal, defendant challenges the trial court's territorial jurisdiction to impose the great bodily injury enhancements on the basis that the infliction of injury occurred entirely outside of California.  But as we will explain, because the court properly exercised territorial jurisdiction over the substantive charged crimes of human trafficking, pimping, and pandering, it also properly exercised jurisdiction over the great bodily injury enhancements, which were merely aspects of the substantive offenses over which the court already had jurisdiction, not separate criminal acts.

Defendant also claims the trial court abused its discretion when it denied his oral motion to continue the sentencing hearing, or alternatively that trial counsel was constitutionally ineffective for failing to file a written motion to continue.  We reject defendant's claim due to his failure to demonstrate a reasonable probability of a more favorable result had the continuance been granted.

Accordingly, we will affirm the judgment, but direct the trial court to correct a typographical error in the abstract of judgment.

## FACTS AND PROCEEDINGS

*Factual Background*

We summarize the facts only briefly, as the facts are generally not material to this appeal.  Defendant and T.D. were involved in an ongoing abusive relationship, which began in spring 2019 and continued until March 2020, when T.D. left defendant.  During their relationship, defendant physically abused, pimped, pandered, and trafficked T.D.

---

[1]  Further undesignated statutory references are to the Penal Code.

throughout the State of California and across state lines, including a trip to Phoenix, Arizona.

The incident that formed the basis for the enhancement that is the subject of this appeal occurred in Phoenix, Arizona in December 2019.  A surveillance video of the incident showed T.D. and defendant walking toward the entrance of a gas station convenience store.  While viewing the video of the incident, T.D. testified that she appeared to be upset and that she began running toward the store.  The video showed her lying on the floor of the convenience store, and defendant driving away from the scene.  T.D. recalled that defendant "did that to [her]," and that that "type of violence" was consistent with the way he often assaulted her.  T.D. did "[n]ot really" recall being in the store, but she recalled waking up in the hospital.  She received stitches or staples to repair a wound on her head.  Upon leaving the hospital, T.D. reunited with defendant because she did not have identification, money, or a cell phone, and she did not want to be left in Arizona, where she did not know anyone, without a way to get back to California.

After T.D. left defendant, he continued to pursue her, kidnapping her on one occasion and stabbing her on another.

*Procedural History*

As relevant here, defendant was charged with human trafficking (§ 236.1, subd. (b); count three), pimping (§ 266h, subd. (a); count four), and pandering (§ 266i, subd. (a)(2); count five); each count was alleged to have occurred between June 6, 2019, and March 22, 2022.  As to each of those counts, the information alleged an enhancement that defendant personally inflicted great bodily injury under circumstances involving domestic violence during the commission of a felony.  (§ 12022.7, subd. (e).)

During closing argument, the prosecutor elected the Phoenix incident as the sole basis for the great bodily injury enhancement.  He argued that the crimes of pimping and pandering were established by defendant's prior contact with law enforcement in 2019, but that the crime of human trafficking was first proved beyond a reasonable doubt at the

3

time of the Phoenix incident on the basis that defendant drove T.D. to Phoenix to have her work as a prostitute, he obtained money as a result, he used violence to keep her in Phoenix, and she did not have clothes, identification, or a way to get back to California without defendant.[2] Defense counsel argued in closing that there was no evidence the injuries defendant inflicted on T.D. in Phoenix were related to human trafficking.

The jury found defendant guilty in counts three through five, and it found true the great bodily injury enhancement alleged as to each of those counts. The trial court sentenced defendant to an aggregate term of 55 years eight months in prison, which included a sentence of 20 years on count three, doubled due to defendant's prior strike, and the upper term of five years for the great bodily injury enhancement on that count. Sentences for counts four and five and the great bodily injury enhancements thereon were stayed.

Defendant timely appealed. The case was fully briefed in November 2023 and assigned to the current panel at the end of that month.

## DISCUSSION

### I

### *Territorial Jurisdiction*

Defendant contends the trial court lacked jurisdiction to impose the great bodily injury enhancements on the human trafficking, pimping, and pandering counts because the infliction of injury occurred entirely in Arizona. In support, he relies exclusively on *People v. Joseph* (2021) 63 Cal.App.5th 1058 (*Joseph*), which held that a California court lacked territorial jurisdiction over crimes occurring entirely outside of California.

---

[2] The prosecutor noted, however, that he was not required to point to an exact moment when human trafficking was established because human trafficking was alleged as a continuous course of conduct. We will discuss this principle in greater detail in the Discussion, *post*.

As we will explain, *Joseph* is distinguishable from this case because defendant here does not challenge territorial jurisdiction over a separately charged criminal act, as was the case in *Joseph*. Rather, he challenges the court's territorial jurisdiction over a sentencing enhancement, which authorizes additional punishment where a specified *aspect* of a criminal act is present. Because the court had territorial jurisdiction over the criminal acts of human trafficking, pimping, and pandering, it also had territorial jurisdiction over aspects of those same criminal acts, the presence of which authorized imposing additional punishment through a sentencing enhancement.

A. *Procedural History*

At the sentencing hearing, defense counsel for the first time challenged the trial court's territorial jurisdiction to impose the great bodily injury enhancement on the basis that the conduct supporting the enhancement occurred entirely in Arizona, and she requested a continuance to research and brief that issue.[3]

The prosecutor responded that California courts are authorized to punish a defendant for crimes committed wholly or partially in California (§ 27), and the human trafficking, pimping, and pandering counts were charged as "continuous course[s] of conduct" to allow the jury to find that the offenses occurred over an extended period of time and in multiple jurisdictions, including Arizona.[4] He added that he had identified

---

[3] Counsel also moved for a continuance to allow her time to file a sentencing brief. We will address defendant's claims regarding the trial court's denial of that motion, *post*.

[4] Charging a crime as a "continuous course of conduct" is an exception to the general requirement of jury unanimity (see *People v. Russo* (2001) 25 Cal.4th 1124, 1132 [where a defendant is charged with a criminal offense but the evidence suggests more than one discreet crime, either the People must elect among the crimes, or the trial court must instruct the jury that they must all agree on the same criminal act]; *People v. Maury* (2003) 30 Cal.4th 342, 423 [no duty to instruct sua sponte on unanimity if the offense constitutes a "continuous course of conduct"]), and it applies when " ' "the statute contemplates a continuous course of conduct of a series of acts over a period of time" ' " (*People v. Napoles* (2002) 104 Cal.App.4th 108, 115).

the Phoenix incident as taking place on the date it could be proven that defendant's relationship with T.D. had risen beyond a "standard pimping and pandering relationship" to the level of human trafficking. The prosecutor acknowledged, however, that while the underlying offenses were alleged to have occurred in multiple jurisdictions, the infliction of injury supporting the great bodily injury enhancement was alleged to have occurred solely in Arizona.

The trial court determined that jurisdiction is conferred where there are contacts within the state such that defendant intended to and did actually cause harm within California, and it concluded the contacts here authorized it to impose the great bodily injury enhancements. The court found the continuous course of conduct alleged in the human trafficking count involved defendant and T.D. starting from their base in Sacramento and traveling to various places in California and to other states (including Nevada and Arizona) with the intent to engage her in prostitution, before returning back to Sacramento. The court also found that defendant would beat T.D. any time he perceived that she disrespected him, and the Phoenix incident was only notable because the beating was captured on surveillance video. The court found that defendant's conduct was intended to, and did, cause harm within California, and the conduct in Arizona was indivisible from what happened in California and throughout defendant's relationship with T.D.

B. *Territorial Jurisdiction Background*

"It long has been established that a state will entertain a criminal proceeding only to enforce its own criminal laws, and will not assume authority to enforce the penal laws of other states or the federal government through criminal prosecutions in its state courts." (*People v. Betts* (2005) 34 Cal.4th 1039, 1046 (*Betts*).) This principle is commonly referred to as territorial jurisdiction. (*Ibid.*)

"A California court's territorial jurisdiction is defined by statute." (*Fortner v. Superior Court* (2013) 217 Cal.App.4th 1360, 1366.) To address the problem that

6

conduct relating to criminal activity frequently is not confined to the borders of a single state, and strictly applying territorial principles can make prosecuting crimes involving more than one state problematic, the Legislature "adopt[ed] statutes that provide our state with broader jurisdiction over interstate crimes than existed at common law," which applied a narrow principle of territorial jurisdiction. (*Betts*, *supra*, 34 Cal.4th at p. 1047.) Relevant here are sections 27 and 778a, which " 'defin[e] jurisdiction over criminal acts' " (*Betts*, at p. 1052) and are "appropriate for specifying the circumstances under which California penal laws will apply to criminal activity that spans more than one state" (*Betts*, at p. 1053).

Section 27 generally permits a defendant to be punished under California law for any crime committed "in whole or in part" in the state. (§ 27, subd. (a)(1); *Betts, supra,* 34 Cal.4th at p. 1047.) Section 778a, subdivision (a) provides: "Whenever a person, with intent to commit a crime, does any act within this state in execution or part execution of that intent, which culminates in the commission of a crime, either within or without this state, the person is punishable for that crime in this state in the same manner as if the crime had been committed entirely within this state." Our Supreme Court has interpreted section 778a to confer jurisdiction over an offense "if the defendant, with the requisite intent, does a preparatory act in California that is more than a de minimis act toward the eventual completion of the offense." (*Betts*, at p. 1047.)

"The issue of whether territorial jurisdiction exists is decided by the trial court, not by a jury." (*People v. Renteria* (2008) 165 Cal.App.4th 1108, 1116.) "The prosecution has the burden of proving the facts necessary to establish territorial jurisdiction by a preponderance of the evidence." (*Betts*, *supra*, 34 Cal.4th at p. 1055.) "We apply the trial court's determination of factual issues if supported by substantial evidence but independently review its legal determinations. Cases, however, have not made clear whether the trial court's application of the law to the facts should be reviewed independently or deferentially." (*Renteria*, at p. 1116.)

7

C. *Analysis*

To support his challenge to the trial court's jurisdiction over the great bodily injury enhancement, defendant relies exclusively on *Joseph*, *supra*, 63 Cal.App.5th 1058. The defendant in *Joseph* was charged with conspiracy to commit human trafficking, and five counts of rape that occurred in North Carolina. The appellate court agreed with defendant's contention that the trial court lacked jurisdiction over the rape charges because the rapes were " 'commenced' and 'completed' in North Carolina"; that is, no part of the offenses occurred in California (§ 27), and no evidence suggested that the defendant had formed the intent to commit the rapes or had performed any preparatory acts related to the rapes in California (§ 778a). (*Joseph*, at p. 1069.) The court also rejected the Attorney General's argument that jurisdiction was conferred on the basis that the charged rapes furthered the human trafficking conspiracy, which originated in California. (*Joseph*, at pp. 1069-1070.) The court reiterated that there was no evidence that the defendant had performed any preparatory acts in California toward the completion of the offense of rape, which was a separate charged offense from the human trafficking offense. (*Id.* at p. 1070.)

This case does not involve jurisdiction taken over separately charged criminal acts; instead, here we are called upon to determine whether the trial court properly took jurisdiction over sentencing enhancements. Addressing that issue requires us to discuss the nature of such enhancements and the relationship between the enhancements and the crimes to which they attach. In *People v. Ahmed* (2011) 53 Cal.4th 156 at page 163, our Supreme Court discussed what constitutes a "criminal act" in the context of applying section 654.[5] The court observed that "enhancements are different from substantive

---

[5] Section 654, subdivision (a) provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either

8

crimes" because, while enhancement statutes may resemble substantive offenses in that they impose additional punishment based on a factual finding that a defendant engaged in particular conduct while committing a crime, they do not define criminal acts and therefore are not separate offenses. (*Ahmed*, at p. 163.) Put another way: "Provisions describing substantive crimes . . . generally define criminal *acts*. But enhancement provisions do not define criminal acts; rather, they increase the punishment for those acts. They focus on *aspects* of the criminal act that are not always present and that warrant additional punishment." (*Ibid.*) Great bodily injury enhancements focus on the " '*circumstances of the crime* and typically focus on what the defendant did when the current offense was committed." (*Id.* at p. 161, see *id.* at p. 164.)

With that understanding of what constitutes a sentencing enhancement, we conclude *Joseph* is inapplicable to this case.[6] *Joseph* recognized that California courts lack territorial jurisdiction over *criminal acts* occurring entirely in another state. But here, the relevant criminal acts are human trafficking, pimping, and pandering. The infliction of great bodily injury is not a separate criminal act; rather, it is an *aspect* of the criminal act. Accordingly, the trial court has jurisdiction over any aspect of a criminal act to the same extent that it has jurisdiction over the criminal act as a whole.

The parties do not dispute that the trial court had jurisdiction over the criminal acts of human trafficking, pimping, and pandering as charged here.

---

of such provisions, but in no case shall the act or omission be punished under more than one provision."

[6] Although we conclude *Joseph* is distinguishable, we note our disagreement with defendant's characterization of *Joseph* as "controlling authority." "We, of course, are not bound by the decision of a sister Court of Appeal. [Citation.] But '[w]e respect stare decisis . . . which serves the important goals of stability in the law and predictability of decision. Thus, we ordinarily follow the decisions of other districts without good reason to disagree.' " (*The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1529.)

In ruling on its jurisdiction, the trial court found that defendant engaged in a continuous course of conduct of human trafficking over an extended period of time by bringing T.D. to various locations in California and to other states, including Arizona, with the intent of engaging T.D. in prostitution. Because the trial court had jurisdiction over defendant's continuous course of conduct, including the portion of that conduct occurring in other states, it had jurisdiction over defendant's infliction of great bodily injury that was an aspect of that course of conduct.

II

*Motion for Continuance*

Defendant contends the trial court violated his Sixth Amendment right to effective assistance of counsel when it denied counsel's request for a continuance to research the jurisdictional issue discussed *ante* and to file a sentencing brief. Because there is no reasonable probability that the result would have been more favorable to defendant had the court granted the continuance, we reject defendant's claim.

A. *Procedural Background*

At the sentencing hearing, in addition to raising the issue of territorial jurisdiction, defense counsel orally requested a one-week continuance to file a sentencing memorandum to address the applicability of newly enacted legislation to the facts of this case.

The trial court informed the parties that it was "averse" to continuances due to the court's growing caseload. It noted that there was no written motion to continue (see § 1050, subd. (b) [motion to continue must be filed and served at least two court days before the hearing sought to be continued]), and it would likely proceed with sentencing if the prosecution represented that it was opposed to a continuance and that the victim was present. The prosecutor informed the court that the victim was not present, and he twice declined to oppose the continuance--stating only that it was prepared to proceed-- before opposing the continuance when asked by the court for the third time. After taking

10

a recess to review the caselaw as it related to the jurisdictional issue, the court denied the motion to continue on the basis that there was not good cause to do so.

Counsel subsequently informed the court that she had not reviewed the probation report with defendant and reiterated that she had not filed a sentencing brief. The court asked whether adjourning until the afternoon would give counsel enough time to review the probation report with defendant, and she said it would.

Upon reconvening, the court asked the parties to argue whether any mitigating factors made the low term the presumptive sentence under section 1170, or whether any mitigating factors weighed in favor of dismissing enhancements under section 1385.

Defense counsel reiterated that she had not had the opportunity to research the applicability of section 1170 or section 1385 to defendant's case. Nevertheless, she argued that defendant was sexually assaulted over the course of two years as a teenager while in a juvenile detention facility, and therefore section 1170, subdivision (b)(6)(A) applied. She also argued that the court should dismiss the enhancements because the current offenses were connected to prior victimization and childhood trauma, specifically the sexual violence he suffered as a teenager. (§ 1385, subd. (c)(2)(E).) Counsel noted that in some instances, prior sexual trauma results in the victim of the trauma later committing sexual assaults against others.

In the context of arguing that the court should strike defendant's prior strike, counsel argued: "As the Court is aware, as individuals get older, their risk of recidivism is reduced. These are violent felonies for which he will serve at 85 percent. And so [defendant] wouldn't even be eligible for parole until sometime in his mid sixties [*sic*]."

The court accepted counsel's representation that defendant experienced sexual abuse trauma as a child, and it noted that that one mitigating factor could "trigger a presumptive low term if not outweighed by other factors." (See § 1170, subd. (b)(6).) However, the court recognized that numerous aggravating factors had been found true, including that the crime involved great violence or great bodily harm (Cal. Rules of

11

Court, rule 4.421(a)(1)), defendant was armed with or used a weapon at the time of the commission of the crime (*id.*, rule 4.421(a)(2)), the victim was particularly vulnerable (*id.*, rule 4.421(a)(3)), defendant threatened witnesses or dissuaded them from testifying (*id.*, rule 4.421(a)(6)), defendant engaged in violent conduct (*id.*, rule 4.421(b)(1)), defendant's convictions as an adult were numerous and of increasing seriousness (*id.*, rule 4.421(b)(2)), and defendant had served a prior prison term (*id.*, rule 4.421(b)(3)).

Balancing the mitigating and aggravating circumstances, defendant's rights against society's rights, and defendant's prospects and background, the trial court found that defendant "would appear to have no prospects" due to his long history of preying on other people and committing crimes, and found imposing a low or middle term would be contrary to the interest of justice.

Next the trial court turned to the enhancements, noting that it must dismiss an enhancement if it is in the furtherance of justice to do so. (§ 1385, subd. (c)(1).) In making that determination, section 1385, subdivision (c)(2) provides: "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." Included in the enumerated list are: (1) "[t]he current offense is connected to prior victimization or childhood trauma" (*id.*, subd. (c)(2)(E)); and (2) the application of an enhancement could result in a sentence of over 20 years" (*id.*, subd. (c)(2)(C)).[7]

---

[7] Section 1385, subdivision (c)(2)(C) provides that, where application of an enhancement could result in a sentence of over 20 years, "the enhancement *shall* be dismissed." (Italics added.) However, that requirement applies only where the court does not find that dismissal would endanger public safety. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 296.)

The trial court recognized defendant's argument that his offenses were connected to his prior sexual trauma, and it noted that sexual abuse like that suffered by defendant "frequently . . . affect[s] people their entire lives." However, it stated: "I don't think it's accurate to say that most people who are sexually abused go on to commit crimes." The court concluded that it might see a connection if the crimes here were sexual in nature, but defendant's crimes involved physical abuse, forcing T.D. to give him all of her money after engaging in acts of prostitution, possession of a firearm, and evading police. It concluded that there was no connection between defendant's prior victimization and his current offenses.

Recognizing that application of an enhancement could result in a sentence of over 20 years in prison, the court proceeded to determine whether dismissing the enhancement would endanger public safety. (§ 1385, subd. (c)(2).) The court balanced defendant's rights, the safety of society as a whole, defendant's background and prospects, and the various mitigating and aggravating factors. It recounted defendant's extensive criminal background, including juvenile adjudications of receiving stolen property, lewd act on a child, and sodomy, and his convictions as an adult for carjacking, vehicle theft, domestic violence, felon in possession of a firearm, possession of controlled substances, misdemeanor criminal threats, and resisting arrest.

The trial court stated: "[D]efendant has had numerous opportunities to reform his life, has failed spectacularly on every single occasion. He has hurt people. He has stolen from people. And in this case, he stabbed and almost killed [T.D.] [¶] So when I balance all of that out and look at the main question, which is, under [§] 1385[, subdivision] (c)(2), if the Court dismissed this enhancement, what's the likelihood that it would result in physical injury or serious danger to others, and I think that the answer to that is that it is an almost certainty. [¶] I find the likelihood of the dismissal of an enhancement would result in a physical injury or other serious danger to people in our society, and I think that it's far beyond the minimal standard that the legislature has put.

13

I think it becomes almost a near certainty that the defendant would be a danger to others if the Court does not impose the maximum term in this case."

B. *Legal Background*

"Continuances shall be granted only upon a showing of good cause." (§ 1050, subd. (e).) " 'The determination of whether a continuance should be granted rests within the sound discretion of the trial court . . . .' [Citation.] Absent a showing of abuse of discretion and prejudice to the defendant, the denial of a motion for continuance does not require reversal." (*People v. Jacobs* (2007) 156 Cal.App.4th 728, 735-736.) " '[A]n order of denial is seldom successfully attacked.' " (*People v. Beeler* (1995) 9 Cal.4th 953, 1003.) Prejudice is shown where there is a reasonable probability that the result would have been more favorable had the court granted the motion. (*People v. Hawkins* (1995) 10 Cal.4th 920, 945). A "reasonable probability" "does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." (*College Hospital v. Superior Court* (1994) 8 Cal.4th 704, 715.) The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion. (*People v. Beames* (2007) 40 Cal.4th 907, 920.)

C. *Analysis*

Defendant fails to demonstrate a reasonable probability of a more favorable result had the trial court granted his motion to continue the sentencing. We address defendant's arguments in turn.

First, defendant contends a continuance would have allowed him to argue the issue of territorial jurisdictional with the benefit of *Joseph*, *supra*, 63 Cal.App.5th 1058. But as we concluded *ante*, the trial court correctly determined that it had territorial jurisdiction over the criminal conduct at issue here.

Second, defendant asserts that the trial court imposed the upper term on his human trafficking offense on the basis that his sexual abuse trauma did not contribute to the commission of his current offenses, and he contends it was reasonably probable that his

14

sentencing brief would have persuaded the court to reach a different conclusion. As relevant here, section 1170, subdivision (b)(6) requires the court to impose the low term if sexual abuse suffered by a defendant as a child was a contributing factor in the commission of the offense, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice."

However, contrary to defendant's argument, the trial court *accepted* counsel's representation that defendant experienced sexual abuse trauma as a child, and it recognized that this finding could "trigger the presumptive low term if not outweighed by other factors." The court then weighed the aggravating factors against that lone mitigating circumstance, and it found that imposing the low or middle term "would be contrary to the interest of justice." Thus, a hypothetical sentencing brief arguing that defendant's sexual trauma contributed to his current offenses was not reasonably probable to result in a more favorable outcome at sentencing because the court accepted counsel's representation, and it imposed the upper term despite the applicability of section 1170, subdivision (b)(6), on other grounds.

Third, defendant argues that it was reasonably probable his sentencing brief would persuade the trial court that it could strike the enhancement without jeopardizing public safety. Defendant asserts that his sentencing brief would have informed the court that he would be an elderly man when released even if the court struck the enhancement, and that elderly men are unlikely to recidivate.[8]

---

[8] Specifically, defendant asserts that he would have informed the court that he was 40 years old at the time of sentencing, would have been sentenced to 45 years eight months in the absence of the imposed enhancements, and would have served 85 percent of the imposed sentence (see §§ 2933.1, subd. (a) [person convicted of felony offense listed in § 667.5, subd. (c) shall accrue no more than 15 percent of worktime credit], 667.5, subd. (c)(8) [violent felony where great bodily injury allegation under § 12022.7 is charged and proved]).

Defendant's argument fails to persuade because trial counsel made that precise argument at the sentencing hearing when asking the court to strike his prior strike. Counsel argued that defendant was 40 years old at the time of sentencing, and even if the court struck his prior strike conviction, his sentence would still be longer than 25 years. Counsel added: "As the Court is aware, as individuals get older, their risk of recidivism is reduced. These are violent felonies for which he will serve at 85 percent. And so [defendant] wouldn't even be eligible for parole until sometime in his mid sixties [*sic*]." Despite being fully aware of the argument defendant now claims was reasonably likely to alter the court's analysis, the court concluded that "it is an almost certainty" that dismissing the enhancement would result in physical injury or serious danger to others. Therefore, it is not reasonably probable that such an argument made in a hypothetical sentencing brief would have been more persuasive than the same exact argument made orally at sentencing.

C. *Ineffective Assistance of Counsel Claim*

Defendant claims trial counsel was constitutionally ineffective for failing to file a written motion to continue. (See § 1050, subd. (b) [continuance motion must be filed and served at least two days before the hearing sought to be continued.]) To successfully demonstrate ineffective assistance of counsel, defendant must show: (1) his counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Ledesma* (1987) 43 Cal.3d 171, 216, 217-218.) " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*Ledesma*, at p. 218.) Because defendant has failed to demonstrate a reasonable probability that successfully obtaining a continuance would have resulted in a more favorable outcome, his claim lacks merit.

16

III

*Abstract of Judgment*

We agree with the People that the abstract of judgment incorrectly reflects that defendant was convicted in count 3 of a violation of "section 263, subdivision (b)," rather than section 236, subdivision (b), which is the correct statute of conviction.  We will order the abstract of judgment corrected to reflect the correct statute of conviction. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

**DISPOSITION**

The judgment is affirmed.  The trial court is directed to correct the clerical error on the abstract of judgment and to forward a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.


_____/s_____
Duarte, Acting P. J.


We concur:


\_\_\_\_\_/s_____
Boulware Eurie, J.


\_\_\_\_\_/s_____
Wiseman, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17